UNITED STATES ex rel. MAYER et al. v. GLASS, U. S. Marshal.

UNITED STATES ex rel. McGOWAN et al. v. SAME.

UNITED STATES ex rel. JORDAN v. SAME.

Circuit Court of Appeals, Third Circuit. April 19, 1928.

Nos. 3729–3739.

1. **Criminal law ⬅242(5)—In removal proceeding, indictment is only evidence of probable cause and may be rebutted (18 USCA § 591).**

In proceeding for removal of defendant to another district for trial, under Rev. St. § 1014 (18 USCA § 591), indictment does not establish defendant's guilt, but is only evidence of probable cause for finding guilt, and may be attacked by accused as not charging a crime, and therefore as not showing probable cause.

2. **Criminal law ⬅242(5)—Unverified averments in petitions for habeas corpus do not controvert facts alleged in indictments, as respects removal of defendants (18 USCA § 591).**

Unverified averments in petitions for writs of habeas corpus do not controvert facts al-leged in indictments, as respects removal of defendants to another district for trial, under Rev. St. § 1014 (18 USCA § 591).

3. **Criminal law ⬅242(5)—Extensive allegations of overt acts in indictments held binding on government as respects removal of defendants (18 USCA § 591).**

Where indictments charged very extensively overt acts involved in alleged conspiracy to violate National Prohibition Act (27 USCA), government *held* bound by overt acts charged, as respects removal of defendants to another district for trial, under Rev. St. § 1014 (18 USCA § 591).

4. **Criminal law ⬅242(5)—Indictment for conspiracy, charging that defendant consented to codefendant's withdrawing money from her account, and payment to other defendants, held not to establish probable cause for removal (18 USCA § 591).**

In indictment for conspiracy to violate National Prohibition Act (27 USCA), allegation that defendant L. withdrew from the account of defendant A. in trust company a specified sum with knowledge and consent of A., and with the amount so withdrawn procured cashier's check payable to certain other defendants *held* to charge facts as consistent with A.'s innocence as with that of her guilt, and did not establish probable cause for purposes of her removal to another district for trial, under Rev. St. § 1014 (18 USCA § 591).

5. **Criminal law ⬅242(7)—Prima facie probable cause for removal under indictments charging conspiracy in moving car of beer without bills of lading held rebutted by evidence (18 USCA § 591).**

In proceeding to remove defendants to another district for trial, under Rev. St. § 1014 (18 USCA § 591), under indictments charging conspiracy to violate National Prohibition Act (27 USCA), prima facie case against defendants, who were yard conductor and yardmaster in railroad yards, established by allegations of indictment that they transported a carload of beer from certain premises to another yard without bill of lading covering such shipment, *held* rebutted by their uncontradicted testimony that no bills of lading were required in yard movements, and order of removal to another district for trial was not justified as to them.

6. **Criminal law ⬅242(5)—Indictment charging conspiracy subordinate to conspiracy charged in another indictment held not to establish probable cause for removal (18 USCA § 591).**

Second indictment charging conspiracy by 3 defendants to violate National Prohibition Act (27 USCA), subordinate to and part of conspiracy charged in first indictment against 19 other defendants, which first indictment made no mention of conspiracy charged in second indictment and related to different transactions, and in which defendants named in second indictment could not possibly have taken any part, *held* not to charge crime of conspiracy, on which alone probable cause could be established for removal of said 3 defendants to another district for trial, under Rev. St. § 1014 (18 USCA § 591).

**7. Criminal law ⟨key⟩242(5)—Indictment charging conspiracy to violate National Prohibition Act (27 USCA) by manufacturing and shipping beer to another city for sale held to establish probable cause for removal (18 USCA § 591).**

Indictment reciting that two defendants unlawfully manufactured beer, and conspired to violate National Prohibition Act (27 USCA) by manufacturing unlawful beer and shipping it to a certain city for sale and distribution, *held,* to state a crime constituting probable cause for their removal to another district for trial, under Rev. St. § 1014 (18 USCA § 591).

Buffington, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Middle District of Pennsylvania; Albert W. Johnson, Judge.

Petitions for habeas corpus by the United States, on the relation of Jacob Mayer and others, of Patrick F. McGowan and others, and of James A. Jordan, against John A. Glass, United States Marshal. Petitions dismissed, and petitioners appeal. Affirmed as to Jacob Mayer, William A. Quinn, William V. Loughran, Lester Lord, Jr., and James A. Jordan; reversed as to James J. Dooley, George I. Purcell, Mary L. Anderson, Patrick F. McGowan, William F. McHugh, and Karl Bossert.

Knapp, O'Malley, Hill & Harris, Stanley M. Evans, John M. Gunster, C. P. O'Malley, Vandling D. Rose, Paul G. Collins, M. J. Martin, and Clarence Balentine, all of Scranton, Pa., and Abram Salsburg, of Wilkes-Barre, Pa., for appellants.

A. E. Bernsteen, U. S. Atty., and Wilfred J. Mahon, Asst. U. S. Atty., both of Cleveland, Ohio, for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. These eleven citizens of Pennsylvania were named with twelve citizens of other states as defendants in three inter-related indictments found in the District Court of the United States for the Eastern Division of the Northern District of Ohio charging conspiracies to violate the National Prohibition Act (27 USCA). In proceedings instituted by the government for their removal to the Ohio district for trial, they were held and committed by a United States Commissioner for the Middle District of Pennsylvania. Thereupon each defendant petitioned the District Court for the Middle District of Pennsylvania for a writ of habeas corpus and moved to quash the complaint and otherwise annul the action of the Commissioner. The government at the same time petitioned the court for warrants of removal. All matters thus raised were heard together and the court dismissed the petitions for writs of habeas corpus and the motions to quash the complaints and entered orders for the commitment of all defendants to the United States Marshal for the Pennsylvania district and their removal to the Ohio district for trial. These appeals followed. Although separately argued, they were, because of the relation of one to another, heard at the same time and will be disposed of in one opinion.

The government supported its petitions before the Commissioner and before the court solely by the indictments as evidence of probable cause. The defendants attacked the complaints on which the arrests were made and attacked the indictments also; and, except in the cases against Dooley, Purcell, McGowan, McHugh and Bossert, they relied wholly on the averments in their petitions for writs of habeas corpus to overcome the indictments as prima facie evidence of probable cause. On these appeals the defendants raise twenty-three separate and distinct questions, discuss the law of removal in every aspect and ask for its application to the meager facts of these cases.

[1] The law of removal was correctly stated by the learned trial judge and was recently reviewed by this court in United States v. Mathues, 19 F.(2d) 22, and Swan v. United States, 23 F.(2d) 148, with extended citation of supporting authorities. The cases at bar do not call for a re-statement of the law or a discussion of the law in the many phases which the industry of. counsel have brought into view for, after all, the cases are rather simple. We have, however, carefully considered all matters presented and find ourselves constrained to decide adversely to the appellants all questions save one and that is the ever present and crucial question of probable cause. In deciding that question we have been guided by and shall pursue the discussion solely on the law which we have before stated as follows:

The indictment is introduced in proceedings under section 1014, R. S. (18 USCA § 591), "not to establish the appellant's guilt, but only as evidence to show that there was cause to believe his guilt probable enough to justify his removal for trial." Swan v. United States, supra.

"The indictment is itself evidence that there was probable cause for finding it. Of this, however, the indictment is not conclusive, Tinsley v. Treat, 205 U. S. 20, 32, 27 S. Ct. 430, 51 L. Ed. 689; its evidential effect is only prima facie. Hence the accused

may attack it as not charging a crime and therefore as not showing probable cause." United States v. Mathues, supra.

Our one inquiry, therefore, is whether the indictments charge a crime against each defendant and in that way show probable cause justifying his removal.

These cases illustrate the preference of some government officials, charged with the enforcement of the National Prohibition Act, to enforce that law through internal revenue statutes, customs laws, and the general law of conspiracy found in the Criminal Code, rather than through the National Prohibition Law itself, thus at times converting misdemeanors into felonies and hazarding the greater certainty of convictions under the prohibition law in order to obtain heavier penalties under other laws. Against this practice the federal judiciary has formally expressed itself. These cases also illustrate the opposite positions which parties in removal cases sometimes take, where the government's law representative demands removal to a distant district of all defendants named in an indictment for conspiracy no matter how shadowy their connection with the offense may be and how unlikely their conviction, and where the defendants, shutting their eyes to their sole right of trial in the district "wherein the crime shall have been committed" and without any right of trial in the district of their residence, whether there or elsewhere at the time of the distant crime, In re Palliser, 136 U. S. 265, 267, 10 S. Ct. 1034, 34 L. Ed. 514, regard their home state as a sanctuary with right of trial by a jury of their fellow townsmen. Between these extremes, and wholly without regard to the views of others, it is the solemn duty of the court to find the true line and coldly to decide the law as it is written and to apply it impartially in a given case.

### Nos. 3730 to 3736.

[2] Except in the Purcell and Dooley Cases we accept as true all facts alleged in the indictments. Unverified averments in the petitions for writs of habeas corpus do not controvert them. The question as to each defendant is—does the indictment on the facts as alleged charge a crime against him? If it does, probable cause is shown and he must be removed. If it does not, probable cause is lacking and the warrant of removal cannot be sustained.

The first indictment, though lengthy, is clearly drafted. Naming only the parties here concerned, it states by way of inducement that the Anthracite Beer Company at the city of Scranton, Pennsylvania, manufactured beer of an unlawful alcoholic content; that Mayer, its brewmaster, was in charge of manufacturing unlawful beer; that Purcell was a yardmaster of the Delaware, Lackawanna & Western Railroad Company at Scranton and that Dooley was a yard conductor in the employ of the same company at the same place, and that they secretively put unlawful beer in transportation; that Loughran, Anderson, Lord and another were engaged in the business of buying and selling intoxicating liquor in carload lots; that Quinn was engaged in a similar business; that others were engaged in buying beer and distributing it in Cleveland, Ohio; that others were owners and drivers of trucks in Cleveland, engaged in making deliveries; that others were constables in a township in Ohio, affording protection; that another owned a siding in Cleveland and supplied it as a facility for receiving beer; and that still others were in the business of buying intoxicating liquor and selling it in Cleveland. All this without more might be the charging part of the indictment alleging substantive offenses against the National Prohibition Act. It is however only inducement. Next comes the charging part purporting to show a conspiracy between the nineteen defendants. Its critical words are as follows:

"And the grand jurors aforesaid * * * do further present and find that the said [nineteen named persons] continuously throughout said period of time beginning on or about the first day of April A. D. 1924, and ending on or about the first day of January A. D. 1927;" at Cleveland, Scranton, Chicago, Buffalo, Pittsburgh, Baltimore, and at divers other places, "knowingly, willfully, unlawfully and feloniously did conspire, combine, confederate and agree together and with one another, and each with the other * * * to commit in the manner, by the means and to the extent hereinafter shown, certain offenses against the United States, to wit, to violate the National Prohibition Act, in that they would manufacture, possess, keep, barter, sell, transport, deliver and distribute intoxicating liquor, to wit, a certain malted and cereal beverage known as beer for beverage purposes which said beer would then and there contain more than one half of one per cent. of alcohol by volume," that is, "in the manner, by the means and to the extent" substantially as quoted from the inducing part of the indictment.

[3] Clearly the indictment thus far recited would conform to the requirements of a criminal pleading for conspiracy at common law,

but to comply with the statutory law of the United States in respect to such a pleading the draftsman had to plead at least one overt act. He pleaded forty-eight. Of these at least one is an overt act charged against each defendant. Having elected to aver overt acts so extensively, the government is bound by them in proceedings of this kind and also is bound by what they show and do not show. As they purport to be acts in furtherance of the conspiracy charged, the averments must make it clear that they grew out of or had some relation to the conspiracy. Applying this test to the seven defendants here concerned under the first indictment, it will be enough to say that the test is satisfied on a showing that the relation is established as to Mayer, Quinn, Loughran and Lord. Whether the test is met in respect to Dooley, Purcell and Anderson requires discussion.

[4] The one overt act charged against Mary L. Anderson is in these words:

"Forty-Fifth. That the said defendant, William V. Loughran, on or about the third day of August A. D. 1926, at the city of Scranton aforesaid, withdrew from the account of the defendant, Mary L. Anderson, in the Anthracite Trust Company of Scranton, Pennsylvania, aforesaid, the sum of six thousand dollars, with the knowledge and consent of the aforesaid defendant, Mary L. Anderson, and with the aforesaid six thousand dollars so drawn as aforesaid procured from the aforesaid Anthracite Trust Company a cashier's check for the sum and amount of six thousand dollars payable to the said defendant, William J. Vincent, alias William C. Vincent, alias W. J. Vincent."

We inquire, in the terms of an informal demurrer—well, what of it? As this is an averment of an act alleged to have been done by Mary L. Anderson in furtherance of the conspiracy, the acts of others, namely of Loughran and Vincent, are not chargeable against her unless, indeed, she inspired or ratified them. She is not charged with having drawn the sum from her account, nor is it averred how or for what purpose Loughran drew it, nor is she charged with transmuting the fund into a cashier's check to the order of Vincent, nor is it charged that the check was ever delivered to Vincent or that with the check Vincent ever bought beer made by the Anthracite Beer Company or any one else. The entire substance of the act charged against her is her knowledge of and consent to the withdrawal by Loughran, which, so far as the pleading discloses, is a mental attitude just as consistent with the hypothesis of innocence as with that of guilt. On this showing we think the indictment fails as evidence of probable guilt as to Mary L. Anderson.

[5] The one averment of overt acts in respect to Dooley and Purcell are in these words:

"Fourth. The defendant James J. Dooley, on or about the twelfth day of February, A. D. 1925, at the city of Scranton, aforesaid, acting under orders from the defendant George I. Purcell (Dooley being a yard conductor and Purcell a yardmaster of the Delaware, Lackawanna & Western Railroad Company at Scranton) transported and conveyed the aforesaid carload of beer, which said car was known as MKT 52129, from the premises of the defendant, the Anthracite Beer Company, in the city of Scranton, aforesaid, to yard No. 2 of the Delaware, Lackawanna & Western Railroad Company in the city of Scranton aforesaid, no bill of lading having been then and there made, filed or executed covering said shipment of said carload of beer, which said carload of beer thereafter remained in the aforesaid No. 2 Yard of the Delaware, Lackawanna & Western Railroad Company aforesaid, until the fifth of March, A. D., 1925."

To rebut probable cause evidenced by the indictment and by this alleged overt act, Dooley and Purcell produced independent witnesses who testified in substance that Dooley was a yard conductor in the Scranton yard on the Green Ridge Branch of the Delaware, Lackawanna & Western Railroad Company, in which there were switches for about twenty-five industrial plants, that his duties required him to place empty cars for these industries and to move the cars when loaded into the Scranton yard, and that when he dropped them there he had no further business with them; that Purcell was a terminal trainmaster of the same railroad in charge of about twelve yards covering an area of about fifty square miles in and about Scranton, having under him two general yardmasters, twenty-one yardmasters, about fifty clerks and about three hundred and fifty switchmen, and that he had general supervision over and responsibility for the daily movement of about seven thousand cars in that area. They further testified that he had nothing to do "with the billing of cars or anything of that kind," that under the rules of the company cars in yard movements require no bills of lading, and that they are moved from the terminals after bills of lading have been obtained from agents who alone have authority to issue them. The government did not impeach these witnesses

nor did it controvert their testimony. We think their testimony proves that in moving cars of beer from the siding of the brewery to terminal yards without bills of lading, Dooley and Purcell were obeying the orders of their master, the railroad company, and that such testimony clearly rebuts the prima facie evidence of probable cause for which the indictment stands and that in consequence an order of removal should not have been made against James J. Dooley and George I. Purcell.

### Nos. 3737 to 3739.

[6] This indictment is so far out of the ordinary as to require careful consideration. Though found against only three persons, Patrick F. McGowan, William F. McHugh and Karl Bossert, its first several pages contain a verbatim copy of the whole of the inducement of the first indictment against the nineteen persons there named as defendants. It then continues with averments that McGowan was engaged in the business of making unlawful beer in Bartel's Brewery at Edwardsville, Pennsylvania; that McHugh was the general manager and Bossert the brewmaster. Thus far the nineteen persons first named and the three persons newly named might be charged with substantive offenses against the National Prohibition Act. But that is only inducement. Then comes the charging part of the indictment. Covering the identical period set forth in the first indictment, the grand jurors found that McGowan, McHugh and Bossert "knowingly, willfully, unlawfully, and feloniously did conspire, combine, confederate and agree together and with one another, and each with the other *and* with" the nineteen defendants in the first indictment (naming them) "who are not herein indicted and are therefore referred to as conspirators, * * * to commit in the manner, by the means and to the extent hereinafter shown certain offenses against" the National Prohibition Act, reciting precisely the same offenses and their participation in the same manner by the same persons named in the first indictment, with the conduct of McGowan, McHugh and Bossert added. Then follow the forty-eight identical averments of overt acts contained in the first indictment with three added to cover McGowan, McHugh and Bossert.

For want of a better term we shall call the conspiracy charged by the second indictment an ancillary conspiracy. Of course there is no such thing in law, yet that is what the draftsman tried to charge in a composite indictment. This second indictment charges

a conspiracy subordinate to and a part of that charged in the first indictment, yet the first makes no allusion to that charged in the second. The second indictment charges a conspiracy between three newly named men and the nineteen named in the first indictment and excuses the latter group from complicity by not indicting them. The first indictment, all of whose fact averments are woven into the second, is silent as to conspiracy between the nineteen defendants there named and the three defendants named in the second indictment, yet looking at it one way both indictments are directed to one unified crime. Clearly there may have been a conspiracy between members of the smaller group, or between members of the smaller group and others in Ohio, but there cannot be a conspiracy as alleged between the smaller group at Edwardsville and the larger group at Scranton for many members of the larger group had no pleaded or no conceivable relation to those of the smaller. Moreover, many, if not all, overt acts averred in the first indictment, pleaded to show conspiracy in respect to the sale, purchase and distribution of beer brewed by the Anthracite Beer Company at Scranton cannot relate to the sale, purchase and distribution of beer brewed in Bartel's Brewery at Edwardsville. Neither indictment discloses or even suggests any relation in management or ownership between the Anthracite Beer Company and Bartel's Brewery, the two sources of the unlawful liquors which constitute the bases of the two conspiracies separately charged by the two indictments. Separate and concrete overt acts pleaded in proof of one definite conspiracy between many persons cannot evidence conspiracy between others to do a different thing. The things done and pleaded as overt acts in furtherance of the conspiracy charged by the first indictment and repeated in toto in the second are from their very nature such as to make it impossible for the new conspirators named in the second indictment to conspire, as alleged, with all the conspirators named in the first. Both groups may have been linked up with the Ohio group, the purchasing and distributing end of the transactions, but neither indictment shows, when its charging part is read in the light of its averments of overt acts, that either of the Pennsylvania groups was linked up with the other and, accordingly, the second indictment does not charge a crime of conspiracy on which alone probable cause can be established and resort to section 1014, R. S., be had.

We are of opinion that the order for the

warrant of removal of Patrick F. McGowan, William F. McHugh and Karl Bossert should be reversed.

### No. 3729.

[7] This indictment recites that James A. Jordan, owner and operator of the Castanea Ice & Beverage Company at Lock Haven, Pennsylvania, and Michael Newheile, his brewmaster, manufactured unlawful beer. It then charges that, they conspired to violate the National Prohibition Act by making unlawful beer and shipping it to Cleveland for sale and distribution. Jordan alone was apprehended and held for removal to Ohio for trial. This indictment has the virtue of simplicity. There is no attempt to tie up the conspiracy here charged with the conspiracies of the Scranton and Edwardsville groups. The indictment, we think, adequately states a crime, against the probable cause of which the defendant has produced nothing in rebuttal.

The order for the warrant for the removal of James A. Jordan must be sustained.

Nothing in this opinion should be construed as an expression by this court as to the guilt or innocence of any of the parties concerned or as to the power of the government to proceed against them for any crime in a proper forum.

The formal decree of this court will be that in cases numbered 3730 to 3736 the part of the order of the District Court committing Jacob Mayer, William A. Quinn, William V. Loughran and Lester Lord, Jr., to the marshal for removal to the Eastern Division of the Northern District of Ohio for trial is affirmed, and the part committing James J. Dooley, George I. Purcell and Mary L. Anderson is reversed; that in cases numbered 3737 to 3739 the order of the District Court committing Patrick F. McGowan, William F. McHugh and Karl Bossert for removal to the Eastern Division of the Northern District of Ohio for trial is reversed; and that in case numbered 3729, the order of the District Court committing James A. Jordan for removal to the Eastern Division of the Northern District of Ohio for trial is affirmed.

BUFFINGTON, Circuit Judge (dissenting). The basis of these removal proceedings is an indictment found in the United States District Court for Northern Ohio, charging conspiracy to violate the National Prohibition Act. Without technically discussing such indictment we may in general say the purpose of the conspiracy was to manufacture illegal beer at Scranton in the Middle District of Pennsylvania, to sell the same and cause it to be transported by rail to Cleveland, in the Northern District of Ohio, and there sell the same for beverage purposes. Manifestly, a large number of persons had to co-operate in the carrying out of such a widely extended operation, the successive steps of which are set forth in the indictment.

Referring only to those alleged conspirators who were by the court below ordered to be removed for trial, which order is now reversed, and whose cases form the subject of the present dissent, we note that the indictment alleged the Anthracite Brewing Company of Scranton was engaged "in the business of manufacturing, selling, and disposing of * * * beer for beverage purposes which * * * contained more than one-half of 1 per cent. of alcohol. * * * That George I. Purcell was yardmaster for the Delaware, Lackawanna & Western Railroad at Scranton, Pa., * * * including cars placed, loaded and unloaded on the private siding of the Anthracite Beer Company, * * * and over the movements and placing of cars in and out of the Green Ridge station of the Delaware, Lackawanna & Western Railroad Company. That James J. Dooley was employed * * * as a yard conductor under the supervision of George I. Purcell. * * * That Mary L. Anderson and Lester Lord, Jr., were engaged in the business of buying and selling and dealing in intoxicating liquor, to wit, beer, and bills of lading and shipping orders representing carload lots of intoxicating liquors, to wit, beer, * * * having offices and headquarters in the City of Scranton, Pa." It then specified the various means, persons, and places by and through which and whom beer could be transported to Cleveland and there disposed of, and then averred that "the grand jurors upon their oaths aforesaid do further present and find that the said * * * Mary L. Anderson, * * * George I. Purcell and James J. Dooley, * * * beginning on or about the 1st day of April, A. D. 1924, and ending on or about the 1st day of January, A. D. 1925, * * * at Scranton, in the Middle District of the State of Pennsylvania, * * * under the circumstances and conditions aforesaid, the said defendants and each of them, *well knowing the existence of said circumstances and conditions, knowingly, willfully, unlawfully, and feloniously did conspire, combine, confederate, and agree together and with one another, and each with the other, * * * to commit in the manner, by the means, and to the extent hereinafter shown,* certain offenses

against the United States, to wit, to knowingly, willfully, unlawfully, and feloniously violate the terms and provisions of an Act of Congress of October 28, 1919 (41 Stat. 305), entitled 'An act to prohibit intoxicating beverages, and to regulate the manufacture, production, use, and sale of high-proof spirits for other than beverage purposes, and to insure an ample supply of alcohol and promote its use in scientific research and in the development of fuel, dye, and other lawful industries,' particularly title 2 thereof (27 USCA § 4 et seq.), the short title of which act of Congress is 'National Prohibition Act,' and which act of Congress is commonly known as the 'Volstead Act,' *in that they would manufacture, possess, keep, barter, sell, transport, deliver, and distribute intoxicating liquor,* to wit, a certain malt and cereal beverage known as beer, for beverage purposes, which said beer would then and there contain more than one-half of one per cent. of alcohol by volume, and would then and there be fit for use for beverage purposes, contrary to and otherwise than as authorized by the aforesaid National Prohibition Act, *all of which said offenses would be involved in the transactions of manufacturing, possessing, keeping, bartering, selling, transporting, delivering, and distributing said beer, which it then and there was the object of said unlawful and felonious conspiracy, combination, confederation, and agreement to accomplish in connection with the beer aforesaid;* and that for a better understanding of the character and scope of said unlawful and felonious conspiracy, combination, confederation, and agreement, reference is hereby made to the following specifications of things, which among other things, some of said defendants were, according to the terms thereof, to do and neglect to do *in knowingly carrying out the said unlawful and felonious conspiracy,* combination, confederation and agreement, and also to the Overt Acts hereinafter set forth."

The indictment then averred the Anthracite Beer Company was to make the unlawful beer "which said beer was to be sold and distributed for beverage purposes in Cleveland"; that Purcell and Dooley were to move cars of beer from the Anthracite Beer Company's siding and allow them to remain on a certain yard "until such time as said carloads of beer were disposed of and conditions were favorable to the movement of said cars to their respective ultimate destinations"; that Mary L. Anderson and certain named other persons "were to buy intoxicating liquor, to wit, beer, and bills of lading representing carloads of said beer, from the aforesaid Anthracite Beer Company, and divers other persons and corporations whose names are to the grand jurors unknown, and therefore not herein mentioned, and *were to sell same* to Charles Basso and Frank Delahanty in the city of Cleveland, Ohio; * * * that Charles Basso and Frank Delahanty were to purchase intoxicating liquor, to wit, beer, from the aforesaid * * * Mary L. Anderson and Lester Lord, Jr., who were to procure the same from the Anthracite Beer Company, at the city of Scranton, Pennsylvania, aforesaid, and were to sell, transport, deliver, furnish, and dispose of the aforesaid beer to divers owners and proprietors of so-called 'soft drink parlors' in the city of Cleveland aforesaid, for beverage purposes."

Meeting the requirement that, to maintain an indictment for conspiracy, some overt act in furtherance of such conspiracy must be shown, the present indictment alleged the necessary one overt act and some 47 additional ones, amongst which were acts of George I. Purcell, James J. Dooley, and Mary L. Anderson, as to which and whom the indictment, in addition to the extract quoted in the court's opinion, to wit, the fourth and forty-fifth, averred this further and introductory clause, to wit, "and the grand jurors aforesaid, upon their oath aforesaid, do further present and find that certain of said conspirators at the several times and places hereinafter mentioned, in connection with their names, did do certain acts *to effect the object of said unlawful and felonious conspiracy, combination, confederation, and agreement, that is to say,*" which is by this reference a part of the fourth specification, which names Dooley and Purcell, and the forty-fifth, which names Mary L. Anderson.

In view of the foregoing, it seems to me the indictment charges an unlawful conspiracy, and so alleges the guilty participation of Dooley, Purcell, and Miss Anderson, and makes out such a case of probable cause as warrants their removal. Miss Anderson made no proof whatever to controvert the allegation that the overt act alleged to have been done by her was not done as above "to effect the object of said unlawful and felonious conspiracy, combination, confederation, and agreement," and the fact that Dooley and Purcell proved that some of the acts they did were done in the course of their employment does not negative the fact that even such acts might be done at times and in a manner to aid in this conspiracy, or negative the finding of the grand jury that they

"did do certain acts to effect the object of said unlawful and felonious conspiracy," etc., as above averred and found by the grand jury. Whether they did, whether they performed acts, even in the course of their duty, in a way to aid the purpose of the conspiracy, was to be determined by the trial, not the removing, court. I therefore record my dissent to the action of the court in so far as it failed to order the removal of Miss Anderson, Dooley, and Purcell.

The status of the defendants McGowan, Bossert, and McHugh, who were respectively the brewmaster, proprietor, and the shipping clerk of a brewery at Edwardsville, in the Middle District of Pennsylvania, and their relation to the alleged conspiracy, is substantially the same as that of Mayer, the brewmaster of the Anthracite Brewing Company, and so warranted their removal. I therefore note my dissent in so far as their removal was not ordered.