**JOHNSON v. HOTCHKISS, United States Marshal.**

Circuit Court of Appeals, Ninth Circuit. November 12, 1929.

No. 5905.

C. T. McKinney, of Seattle, Wash. (Arthur E. Simon, of Seattle, Wash., of counsel), for appellant.

George Neuner, U. S. Atty., and J. W. McCulloch, Asst. U. S. Atty., both of Portland, Or., for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

RUDKIN, Circuit Judge. This is an appeal from an order denying a petition for a writ of habeas corpus. The facts, in brief, are as follows: January 16, 1929, an indictment was returned in the District Court of the United States for the Western District of Washington, charging the appellant and six others with a conspiracy to violate the National Prohibition Act and the Tariff Act. We might say in this connection that the appellant was in no wise connected with any of the overt acts charged in the indictment. When the indictment was returned, the appellant was a resident of the state of Oregon, and proceedings were commenced in the latter district for his removal to the Western District of Washington for trial. A hearing was had before a United States commissioner to that end. At this hearing the government offered a copy of the indictment and evidence sufficient in point of law to identify the appellant as the party charged. The appellant then testified in his own behalf that he had been a resident of the state of Oregon for nine years; that he was engaged in the business of farming, or hog raising; that he had

not been in the state of Washington for more than a year prior to the return of the indictment; that he did not know any of the defendants named in the indictment, and never had any business transactions with them, legal or illegal. Four of the defendants named in the indictment also testified that they did not know the appellant, and never had any dealings of any kind with him. A number of witnesses further testified that the appellant bore a good reputation in the community in which he resided.

In rebuttal, one of the prohibition agents testified that, in the latter part of December, 1928, he overheard a conversation between the superintendent of the Great Northern and Northern Pacific terminals in Seattle and J. Arthur Boyd, one of the defendants named in the indictment; that the superintendent asked Boyd if the colored man from Portland had arrived the other night; that Boyd answered in the affirmative, stating that he was sorry the superintendent did not meet him; that he handled the Portland end of the business, and had been very successful. The superintendent further asked Boyd if they were still handling liquor to Portland in baggage cars, and Boyd answered in the negative, stating that they had cut that out, and were transferring it down there in automobiles. The same witness further testified that about the middle of March, 1928, he and another agent saw the appellant leaving a certain house by automobile, accompanied by another automobile; that they lost sight of him and afterwards picked him up in the Spokane, Portland, and Seattle coach yards in Portland; that one automobile was backed up against a coach; that the automobile driven by the appellant was standing over near the switch; that this was about the hour of midnight; and that the appellant and his associate ran away.

It will be seen at a glance that the rebuttal testimony offered by the government had no tendency to show probable cause. If we assume that the appellant was the colored man referred to in the conversation between the superintendent and Boyd, the statements of Boyd were not competent evidence against the appellant and had no tendency to connect him with the conspiracy charged. Sugarman v. United States (No. 5915) 35 F. (2d) 663, decided November 4, 1929. Again, testimony tending to show that the appellant was seen in the coach yards, even under suspicious circumstances, had no tendency to prove that he had committed a crime, much less the crime of conspiracy, in the Western District of Washington. If the government

established probable cause at all, therefore, it was through the copy of the indictment, and that alone.

In discussing the effect of an indictment in such cases, the Circuit Court of Appeals for the Sixth Circuit, in Meehan v. United States, 11 F.(2d) 847, 849, said:

"When we come to the function of the indictment as evidence, we find some confusion in the cases, or at least in the thoughts expressed. If it were taken as prima facie evidence of guilt, in the largest sense of the term 'prima facie,' logical difficulties would arise, because then it would continue of full force, and at the end of every removal proceeding there would be a conflict of evidence, which that tribunal could not try. The cases usually speak of it as prima facie evidence, not of guilt, but of the existence of probable cause. This is perhaps another way of saying that it raises an initial presumption, which might as well be arbitrary as evidential, which continues until it is in some vital particular overcome by entirely convincing testimony. Wherever there is affirmative proof, unchallenged except by the indictment, demonstrating lack of guilt, removal should be denied; if the conclusion of no probable cause is put in any substantial doubt by proofs in addition to the indictment the removal should be made. These we take to be the applicable principles as expressed in the late cases. Haas v. Henkel, 30 S. Ct. 249, 216 U. S. 462, 54 L. Ed. 569, 17 Ann. Cas. 1112; Price v. Henkel, 30 S. Ct. 257, 216 U. S. 488, 54 L. Ed. 581; Beavers v. Henkel, 24 S. Ct. 605, 194 U. S. 73, 85, 48 L. Ed. 882; Morse v. U. S., 45 S. Ct. 209, 267 U. S. 80, 69 L. Ed. 522."

Measured by this rule, we think the government failed in its proof. As against the indictment, the appellant offered uncontradicted testimony tending to show that he was not guilty of the offense charged, and in this he was corroborated by other witnesses. This testimony, we think, was sufficient to overcome any presumption arising from the indictment, and it was then incumbent on the government to offer some additional proof tending to show probable cause. In this respect the government utterly failed. If it had no testimony against the appellant except such as was offered here, the appellant should never have been indicted, and should not now be removed to another district for trial. If the government had other testimony and failed to produce it, the fault is its own.

The order is reversed and the case remanded to the court below, with directions to discharge the prisoner.