UNITED STATES ex rel. SCHARLON v. PULVER, United States Marshal.

UNITED STATES ex rel. DARVIN v. SAME.

Nos. 76, 77.

Circuit Court of Appeals, Second Circuit.

Nov. 2, 1931.

Thomas H. Greene, of Boston, Mass., for appellant Scharlon.

Harold L. Turk, of Brooklyn, N. Y., for appellant Darvin.

Howard W. Ameli, U. S. Atty., E. D. N. Y., of Brooklyn, N. Y. (Simon E. Sobeloff, U. S. Atty., Dist. of Maryland, and James M. Hoffa, Asst. U. S. Atty., Dist. of Maryland, both of Baltimore, Md., and Herbert H. Kellogg, Asst. U. S. Atty., E. D. N. Y., of Brooklyn, N. Y., of counsel), for appellees.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

The relators were indicted in the District Court for the District of Maryland for a conspiracy with numerous others to violate the National Prohibition Law by the unlawful manufacture and possession of beverage alcohol, and by the possession of articles designed for its manufacture. They were arrested in Brooklyn and brought to a United States commissioner to be committed for removal, before whom the prosecution put in evidence the Maryland indictment and proved their identity. The subject of the indictment was the reclamation of potable alcohol out of a denatured product made from an alcohol base, sold under government supervision and known as No. 44-A, after the formula used in its manufacture. This base was mixed with other ingredients to form a solvent known as "lacquer thinner," used in the arts; and the reclamation took place in Baltimore under the immediate direction of two other defendants, Albrecht and Barnett. The relators had a business in the city of New York, consisting of buying and selling, among other things, this "lacquer thinner," and the theory of the prosecution was that they had sold some of it to Albrecht and Barnett in Baltimore, and to two other defendants, Kaplus and Lefkowitz, in New Jersey, who were acting in concert with the Baltimore defendants.

The relators took the stand, were examined at length and denied all such transactions, though they admitted acquaintance with Albrecht, and had had dealings with Lefkowitz and Kaplus. They put on a chemist who somewhat equivocally swore that their product could not be used to recover alcohol which would be sufficiently free from the denaturants to be potable. Also one of the two warehousemen with whom they stored their product, who swore that it had been always inspected by the government; and an accountant who had examined their books and swore that they contained no items of transactions with any defendants in Baltimore. They likewise proved that a shipment of somewhat similar substances which the prosecution attempted to trace to them, and which had gone to the Baltimore defendants, in fact came from another company. The commissioner refused to allow them to put in their books of account, and refused to allow the other warehouseman to prove that the merchandise stored with him had been regularly inspected. The prosecution then proved in rebuttal that one of the relators, Darvin, had been in Baltimore at a time when Albrecht and Barnett were actively engaged

in reclaiming the spirits. That there had been telephone calls between his hotel and theirs, and several calls between their room and the relators' New York office. Also an incriminating talk on the telephone between Darvin and Albrecht, in which the witness professed to be able from another room to recognize Darvin's voice through the telephone, speaking from New York. The commissioner committed the relators to await removal, but before this was ordered they sued out writs of habeas corpus and certiorari to review the commitment. These came on to be heard by the District Court, who dismissed them and remanded the relators to the custody of the marshal. The appeals are from these orders.

There is unquestionably much confusion in the books as to what is open for review upon such proceedings. While it is uniformly held that the indictment makes a prima facie case, what that means is not always clear. It may be no more than to establish a legal presumption of probable cause; on the other hand, it may itself constitute evidence of that fact. Very different consequences follow from these two views, pressed to their conclusions. A true presumption is not evidence, though it supplies its place and requires the other party to proceed with the negative. Unless he does, he loses; when he does, the presumption is out of the case, and the issue is open. On this view, therefore, as soon as the accused puts in any proof, except possibly a bare denial—the equivalent of a plea of not guilty —the indictment disappears, the prosecution must proceed with evidence of probable cause, and the commissioner must decide only between the evidence in denial and the rebuttal. This we understand to be the doctrine laid down in Meehan v. U. S., 11 F.(2d) 847 (C. C. A. 6), and Johnson v. Hotchkiss, 35 F.(2d) 914 (C. C. A. 9).

The other view results practically in circumscribing the writ to an examination of the regularity of the proceeding; that is, as to whether the commissioner allowed the accused proper latitude in presenting his case, and really considered his proof. If he has done so, his conclusion as to the existence of probable cause is irreviewable, and the evidence in rebuttal is never important except in so far as he might without it have found the evidence of the accused persuasive. If the prosecution chooses to take the chance that the indictment alone will satisfy him, it will always be safe on habeas corpus. Perhaps the judge

who orders the removal may think otherwise, but that is a different question. All this necessarily follows from the well-settled rule that in such cases—which are only a species of habeas corpus in general—the writ does not search the correctness of the conclusion as matter of fact. It only examines whether there was any evidence which could justify the finding of probable cause. Oteiza v. Jacobus, 136 U. S. 330, 10 S. Ct. 1031, 34 L. Ed. 464; Bryant v. U. S., 167 U. S. 104, 17 S. Ct. 744, 42 L. Ed. 94; Hyde v. Shine, 199 U. S. 62, 84, 25 S. Ct. 760, 50 L. Ed. 90; Price v. Henkel, 216 U. S. 488, 30 S. Ct. 257, 54 L. Ed. 581; Rodman v. Pothier, 264 U. S. 399, 44 S. Ct. 360, 68 L. Ed. 759; United States ex rel. Hughes v. Gault, 271 U. S. 142, 46 S. Ct. 459, 70 L. Ed. 875. Once it be conceded that the indictment is itself evidence, the testimony of the accused can meet it only as proof against proof, and it will be alone enough to support the finding. The rebuttal is only cumulative, and it is never necessary to consider it upon habeas corpus.

As there is no middle ground, except as we shall try to show later, we must choose between these two. Any decision would test the question which supported a removal, where at once the accused put in more than formal evidence in denial, and the prosecution proved nothing in rebuttal, for such a ruling is obviously inconsistent with the notion that the indictment is only a presumption. There are a number of cases, where, so far as appears, both conditions existed. Beavers v. Haubert, 198 U. S. 77, 25 S. Ct. 573, 49 L. Ed. 950; Hyde v. Shine, 199 U. S. 62, 84, 25 S. Ct. 760, 50 L. Ed. 90; Price v. Henkel, 216 U. S. 488, 30 S. Ct. 257, 54 L. Ed. 581; United States ex rel. Hughes v. Gault, 271 U. S. 142, 46 S. Ct. 459, 70 L. Ed. 875; Magnus v. Keville, 6 F.(2d) 157 (C. C. A. 1); Burton v. Smithers, 31 F.(2d) 966 (C. C. A. 4). None of these was correctly decided if the first doctrine be law. We think that it is not. Yet in several of the opinions the court discussed the effect of the accused's evidence, permitting the inference that he might present a case so strong as to upset the commissioner's finding. Indeed, just this was the result in United States ex rel. Mayer v. Glass, 25 F.(2d) 941 (C. C. A. 3), though Judge Buffington dissented, perhaps with reason. There is however a reconcilement between the possibility in extreme cases of examining the evidence, and the established lim-

itations upon the writ; and while it is somewhat refined, it is not casuistical. The accused is entitled to a real consideration of his proof, and can secure it even on habeas corpus. Suppose for example that he could prove by unimpeachable contemporaneous documents that at the time charged he was physically incapable of committing the crime, as for example, that he was in a hospital recovering from an operation. No commissioner who rationally considered such evidence at all, could fail to discharge him. True, on review we should be passing on the cogency of the proof; not however to decide merely that there was no evidence of probable cause, but that the accused had been denied a rational hearing. The two issues no doubt merge in practice, and this may make the decision embarrassing, but it ought not to deprive the accused of his rights. Perhaps in the end this is no more than saying that there may be cases so flagrant that logic must yield; and. in any case we need only concede arguendo that that is a possibility. The evidence of the relators was far from demonstrating that the indictment could not be true, or that the commissioner could not have given the relators' proofs an honest and understanding consideration. This is true, even though we disregard the rebuttal, whatever its actual contribution to the result.

 We hold therefore that when the accused has had full opportunity to put in his proof and it has been actually considered, he can get no relief on habeas corpus. Tinsley v. Treat, 205 U. S. 20, 27 S. Ct. 430, 51 L. Ed. 689, is not to the contrary; it merely held that he was entitled to his day in court, that is, to a decision based upon the evidence he might present; it had nothing to do with the review of a decision so made. Our decision in United States ex rel. Brody v. Hecht, 11 F.(2d) 128, was in quite another situation, where, although the accused did not testify, the prosecution supplemented the indictment with evidence which showed that no crime had been committed within the jurisdiction of the court where the indictment was lodged. There remains therefore only the question whether the relators were too straitly limited in their proof. After United States ex rel. Hughes v. Gault, 271 U. S. 142, 46 S. Ct. 459, 70 L. Ed. 875, it must be a strong abuse of the commissioner's power that will upset his finding for such a reason. How far he must go we need not say, for it is plain that the relators suffered no serious damage from anything that took place. Their books, if properly proved, were perhaps admissible in their favor, though they did not much tend to prove their innocence; but in any case it is hard to see what they lost by their exclusion after the accountant had testified to their contents. The same is true of the warehouseman whose testimony was excluded. As for the refusal to allow cross-examination of the identifying witness, the ruling was clearly right. The witness was in any case available later, and could then have been freely cross-examined. So far as we can see the commissioner considered all the evidence, and did not unduly hamper its production. This, as we view it, is all we have to decide.

Orders affirmed.