**NUGENT v. MURPHY, United States Marshal.**

**No. 3151.**

Circuit Court of Appeals, First Circuit.
June 3, 1936.

Bernard J. Killion, of Boston, Mass. (Leslie J. Gilbride and Hugo S. Bagnulo, both of Boston, Mass., on the brief), for appellant.

Frank W. Tomasello, Asst. U. S. Atty., of Boston, Mass. (Francis J. W. Ford, U. S. Atty., of Boston, Mass., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

Habeas corpus to secure the discharge of the petitioner who is held for removal to the District of Maine to answer to an indictment for conspiracy, in the federal court. There are about 30 defendants in the indictment; one of whom has the same name as the petitioner and is alleged by the government to be the petitioner.

On a complaint made before the late Commissioner Jenney, Nugent was arrested as a fugitive from the justice of the District of Maine. After a hearing at which he was represented by counsel, the commissioner found that he was the person named in the indictment, and that there was reasonable ground to believe him probably guilty. He accordingly held the petitioner for removal. The petition for habeas corpus was thereupon filed. The District Judge denied the writ, and the petitioner has appealed.

The petition is well drawn and states the petitioner's objections to the proceedings before the commissioner. The principal ones are: (1) That there was no evidence on which the commissioner could find that the petitioner was the defendant named in the indictment; (2) that the commissioner erred in finding that there was probable cause to believe that the petitioner was guilty of the offense charged in the indictment; (3) that the commissioner treated the indictments as conclusive evidence of probable cause. The petitioner also complained because the principal government witness, one Hutchinson,

284

was not recalled for further cross-examination by him. At the hearing before the commissioner, a certified copy of the indictment was produced and the petitioner was called to plead to the complaint, but declined to do so. Other defendants similarly complained against were also present and represented by counsel. Witnesses were called by the government who identified them and also the petitioner as persons named in the indictment. The government then rested its case, and all the defendants including the petitioner also rested, without offering evidence. A short recess was taken before the arguments were to be made.

After the recess counsel for the petitioner requested that one Hutchinson, the identifying witness against Nugent, who had been examined and excused by both sides, be recalled for further questioning. As the witness had left the room, the commissioner took another short recess to see if he could be found and brought back, but it proved impossible to locate him. The hearing was then resumed and was concluded as to all the other defendants except Nugent. The commissioner allowed the case against him to stand over until afternoon to see if Hutchinson could be found in the meantime. When the hearing was resumed, Hutchinson was not there, and counsel for the petitioner requested further postponement until his presence could be obtained. He did not suggest any special point which had been overlooked in Hutchinson's previous examination or which it was desired to cover; the request to have him recalled and for further delay was in general terms. In refusing to accede to it, the commissioner clearly did not abuse his discretionary powers in the conduct of proceedings before him.

Counsel for the petitioner then asked to have the hearing reopened generally in order that he might call witnesses to show lack of probable cause. The commissioner declined to do so, saying: "That opens up the whole case. That opens up the possibility that they may have to bring men from Maine down here." Counsel for the petitioner then limited his offer, saying: "All my evidence I assure you goes solely to the question of the identity of that person (the Nugent named in the indictment) and I am limiting myself solely to that in every question I ask by way of affirmative testimony, and it will

be short." The commissioner then said, "I can conceive if I admit that you are opening up the whole thing"; to which petitioner's counsel replied, "Only as to identity." On this understanding, the petitioner was allowed to call the defendant and five or six other witnesses on the question of identity. They testified in substance that the petitioner could not be the person named in the indictment because on May 1, 1935, and June 4, 1935, when the indicted person is alleged to have committed overt acts by telephoning to other conspirators, the petitioner was down on Cape Cod. The allegations in the indictment with reference to the overt acts just referred to were that they took place "on or about the dates stated." Hutchinson had testified that he was a witness before the grand jury which found the indictment; that in his testimony there he had referred to Lawrence J. Nugent whose name appears in the indictment as a defendant; that when so testifying Hutchinson knew the petitioner; and that the petitioner was the person referred to by him. There was no evidence of any other person of the same or substantially similar name who might have been intended.

The commissioner in effect accepted Hutchinson's evidence and found that the petitioner was a defendant in the indictment; and he treated the indictment as sufficient evidence of probable cause. On the record he was clearly justified in doing so. In refusing to reopen the case, his view may have been that the indictment, which is for a conspiracy to smuggle liquor into Maine, when taken in connection with the facts therein alleged that certain of the conspirators had turned state's evidence, that Nugent was in the liquor business in Boston, that no other person of like name appeared to be known in that connection in this locality, and that he had heard Nugent's testimony on the matter and it had disclosed no striking probability that oversight or error had led to his being named in the indictment, established a case for removal against the petitioner and that the charge was one which would have to be tried out in the court where it was made. If these were his views, as they well may have been, we cannot say that he abused the discretionary powers which the law vests in him, in refusing to reopen the case on the merits. United States ex rel. Scharlon v. Pulver, 54 F.(2d) 261, 264 (C.C.A. 2). The present case is much less

strong for the petitioner than Johnson v. Hotchkiss, 35 F.(2d) 914 (C.C.A.9), on which he relied.

We fully recognize that in cases of this character the commissioner's position is often one of great practical importance to the persons accused. Modern conspiracy indictments in which sometimes scores of persons are named as defendants in a single indictment approach mass prosecution and create grave danger that by mistake innocent persons may be named as defendants. In such cases it is the commissioner's duty to ascertain whether there is reasonable probability of guilt as to the person before him. Tinsley v. Treat, 205 U.S. 20, at page 31, 27 S.Ct. 430, 51 L.Ed. 689; Hastings v. Murchie, 219 F. 83 (C.C.A. 1); Johnson v. Hotchkiss, supra; United States ex rel. Scharlon v. Pulver, supra. The commissioner must on the one side make sure that the defendant is not held unless reasonable ground therefor is shown, and on the other side he must conduct what are essentially preliminary investigations, not trials, with directness and administrative efficiency. On habeas corpus proceedings the commissioner's action will not be set aside unless it appears there was clear violation of important substantial rights of the defendant and a probability of grave injustice. Cases, supra. This we do not think appears in the present case.

The decree of the District Court is affirmed.