## *In re* Doig.

(*Circuit Court, D. California.* October 22, 1880.)

1. INDICTMENT—WARRANT OF REMOVAL—DISTRICT JUDGE—REV. ST. § 1014.—Where a district judge is applied to for a warrant of removal, and it appears from the indictment on which the warrant is asked that the act alleged does not constitute an offence against the United States, or that no trial can be had in the district to which the removal is sought, it is his duty to refuse the warrant.

   *In re Buell,* 3 Dillon, 116.

   *In re Clark,* 2 Ben. 540.

2. MANSLAUGHTER—PILOT—NEGLIGENCE—REV. ST. § 5344.—Section 5344 of the Revised Statutes provides that "every captain, engineer, pilot, or other person employed on any steam-boat or vessel, by whose misconduct, negligence, or inattention to his duties the life of any person is destroyed, * * * * shall be deemed guilty of manslaughter." *Held* that, under this section, destruction of life is the essence of the offence.

*Habeas Corpus.*

*Philip Tease,* U. S. Dist. Att'y, for the United States.

*Milton Andros,* for petitioner.

HOFFMAN, D. J.   The return of the marshal shows that he holds the prisoner by virtue of a commitment by United States Commissioner O'Beirne, commanding him to receive into his custody and safely keep the said Thomas Doig to await the action in the premises of the United States district judge for the district of California.   The offence for which the petitioner was committed is described in the commitment as follows: "That on or about the nineteenth of April, 1880, in the district of Oregon, and within the jurisdiction of the district court of the United States for said district, he, the said Thomas Doig, having then and there control and management of a certain steam-vessel called the Great Republic, as a pilot, did, by his misconduct, negligence, and inattention to his duty as said pilot, cause the death by drowning of the first officer and others of the crew of said ship or vessel, whose names are to me unknown."   The complaint on which the original warrant of arrest was issued charged the prisoner with the offence of manslaughter on the high seas, but it appears by the commitment, and is admitted by the district

attorney, that the only evidence produced to the committing magistrate was a certified copy of an indictment found by the grand jury of the United States for the district of Oregon.

It is contended, on behalf of the petitioner, that the indictment nowhere alleges the crime to have been committed on the high seas or within the district of Oregon; but, on the contrary, it affirmatively appears that the offence, if any, was committed in Washington territory. The district attorney objects to the consideration by the court of this question, and contends that the duty of the district judge in the premises is purely ministerial, and restricted to issuing a warrant for the removal of the prisoner "to the district where the trial is to be had." Rev. St. 1014. This view of the powers and duties of the district judge in this class of cases, or of the powers and duties of the circuit or district court, when the prisoner is brought before it on *habeas corpus*, cannot be maintained. In the case of *In re Buell*, 3 Dillon, 116, the question was presented, under circumstances very similar to those of the case at the bar, to the circuit court for the eighth circuit. Buell was arrested and committed in Michigan for trial in the District of Columbia on an indictment, found in that district, charging him with having written a libel therein, which he afterwards published in Detroit. It was contended there, as here, that the question of the sufficiency of the indictment was for the court in which it was found, and not for the district judge on an application for the warrant of removal. On this Judge Dillon observes: "I cannot agree to the proposition in the breadth claimed for it in the present case. The provision devolves on a high judicial officer of the government a useful and important duty. In a country of such vast extent as ours, it is not a light matter to arrest a supposed offender, and, on the mere order of an inferior magistrate, remove him hundreds, it may be thousands, of miles for trial. The law wisely requires the previous sanction of the district judge to such removal. Mere technical defects in an indictment should not be regarded; but a district judge who should order the removal of a prisoner, when the only probable cause relied on or shown was an indictment, and that indictment failed to show an offence

against the United States, or showed an offence not committed or triable in the district to which the removal is sought, would misconceive his duty, and fail to protect the liberty of the citizen. It is the constitutional right of the citizen to be tried in the district in which the offence imputed to him is alleged to have been committed, and not elsewhere. Article 2, § 2."

The case of *In re Clark*, 2 Ben. 540, is not opposed to this view of the duty of the district judge in cases of this description. The prisoner was remanded, but the court advised that, upon such a proceeding, "the indictment must be held sufficient *unless it be so defective in the material averments that it would be the manifest duty of the court before which it was presented by the grand jury to decline to take action upon it.*" Independently of these authorities, I should have felt no hesitation in holding that, where a district judge is applied to for a warrant of removal, and it appears from the indictment on which the warrant is asked that the act alleged does not constitute an offence against the United States, or that no trial can be had in the district to which the removal is sought, it is his duty to refuse the warrant. I proceed to consider whether the indictment in this case is so defective in material averments that it would be the manifest duty of the court to which it was presented to decline to take action upon it. The indictment alleges, in substance, that Thomas Doig, on the nineteenth of April, 1879, in the district of Oregon, and within the jurisdiction of the district court of the United States for the district of Oregon, was a pilot of steam vessels from and over the Columbia river bar and along the Columbia river to Astoria, in said district of Oregon. This is the only jurisdictional averment to be found in the indictment. The instrument then alleges that on the said nineteenth of April, 1879, the steamer Great Republic was "making a voyage from San Francisco, in the state of California, to Portland, in said district of Oregon, * * * and had on board then and there the said Thomas Doig as pilot, etc.; that said steamer, with said officers, etc., on board, arrived on her said voyage off the Columbia river bar, at or near the automatic buoy, at 12:32 A. M. of the nine-

teenth of April; that the master then and there delivered the vessel to Doig to be by him navigated, etc., as pilot as aforesaid, * * * over the said Columbia river bar and to Astoria, as aforesaid; that said Doig received the vessel, etc., into his exclusive charge as such pilot," etc.

The indictment further avers, in substance, that the night was too dark to admit of the vessel being safely navigated; that it was the duty of said Doig, as pilot as aforesaid, to detain the vessel outside the said bar until she could be navigated in safety; that he neglected his duty in that behalf, and that he then and there misconducted himself as such pilot, and negligently undertook then and there to take and navigate the said vessel in said darkness over the said Columbia river bar, and to Astoria aforesaid, and that by reason of his said misconduct, negligence, and inattention to his duty as pilot as aforesaid, he, the said Thomas Doig, as such pilot, ran the said vessel ashore on Sand island, in said Columbia river, and said vessel was then and there wrecked and lost, and the certain persons, whose names are to the jurors unknown, were by the said misconduct, etc., of said Thomas Doig, as pilot as aforesaid, then and there drowned; that by reason of said misconduct, etc., and the destruction of the lives of said officers, the said Doig became, and was, and is guilty of manslaughter, contrary to the form of the statutes, etc. The section of the Revised Statutes under which this indictment is drawn, is, so far as is material to this case, in substance as follows: "Every captain, engineer, *pilot*, * * * by whose misconduct, negligence, or inattention to his duties the life of any person is destroyed, * * * shall be deemed guilty of manslaughter."

It is not sufficient, under this statute, that the officer has been guilty of misconduct, negligence, and inattention to duty. Human life must have been destroyed. The destruction of life is the essence of the offence. Misconduct, however gross, is innocent under this section unless it be the cause of the manslaughter. It is evident, therefore, that the offender is guilty, not when the misconduct or negligence occurred, (it may be at the beginning of the voyage or trip of the steamer,)

but where that misconduct bore fruit by causing the death of a human being. The first clause of the indictment merely avers, as we have seen, that Thomas Doig, on the nineteenth of April, 1879, in the district of Oregon, and within the jurisdiction of the court, was a pilot, etc. It does not even allege that he was then engaged within the district, or within the jurisdiction of the court, in the performance of his duties as such pilot. It further avers that on the nineteenth of April, 1879, the Great Republic was "making a voyage from San Francisco to Portland," and that on that day she arrived off the Columbia river, at or near the automatic buoy; that Doig then and there took charge of her, and that by his misconduct she was wrecked on Sand island, where the loss of life by drowning occurred.

It is not alleged that the steamer was, at any time while Doig had charge of her, within the jurisdiction of the court. It is not averred that she was on the high seas, or that she was within the district. It is not averred that the automatic buoy, where the alleged misconduct commenced, is within the jurisdiction of the court, or within the district of Oregon; nor is either of these averments made with respect to Sand island, where the deaths by drowning occurred, and where the offence of manslaughter was committed. But this is not all. It affirmatively appears, from an examination of the statutes which define the northern boundary of Oregon, an inspection of the official charts of the coast survey, and the testimony of an expert who identifies the natural objects called for in the description of the boundary line contained in the statutes and laid down on the chart, that Sand island is not within the district of Oregon, but is within the boundaries of Washington territory. The offence is, therefore, not justiciable in the district of Oregon, and the United States courts of Oregon are without jurisdiction to try the offender. The analogy between this case and *In re Buell*, decided by Judge Dillon, is thus seen to be perfect. In that case, as in this, the indictment showed on its face that the offence was not committed within the jurisdiction of the court in which the indictment was found. The prisoner must be discharged.