UNITED STATES v. ILLINOIS TERMINAL R. CO.

(District Court, S. D. Illinois. February 23, 1909.)

1. CARRIERS (§ 37*)—RATES—PUBLICATION.
    Effective railroad regulation must begin with publicity of rates. The penalty for failure on the part of any carrier subject to the act to regulate commerce (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]) to publish and file its rates is as severe as the penalty for failure to strictly observe such rates after filing.
    [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 95; Dec. Dig. § 37.*]

2. COMMERCE (§ 34*)—REGULATION OF RATES—INTERSTATE COMMERCE.
    The line of the defendant railway is entirely within the state of Illinois. The defendant is, however, engaged in the transportation of property moving wholly by railroad from one state to another state. It is, therefore, as much subject to the act to regulate commerce (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]) as it would be if it owned and operated a railway connecting the points in different states between which moved the commodities mentioned in the indictment.
    [Ed. Note.—For other cases, see Commerce, Cent. Dig. § 82; Dec. Dig. § 34.*]

3. CARRIERS (§ 38*) — TRANSPORTATION — INTERSTATE COMMERCE — FAILURE TO FILE RATES.
    By the amendment of June 29, 1906, c. 3591, 34 Stat. 584 (U. S. Comp. St. Supp. 1907, p. 892), transportation by rail of property moving in interstate commerce by a carrier which has not filed its rates for such service is a misdemeanor.
    [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 96; Dec. Dig. § 38.*]

(Syllabus by the Court.)

William A. Northcott, U. S. Atty., Henry A. Converse and Joseph H. Story, Asst. U. S. Attys., and John H. Marble, Atty. Interstate Commerce Commission.

Ashcraft & Ashcraft, and Edwin M. Ashcraft, Jr., for defendant.

HUMPHREY, District Judge. The defendant here was indicted under section 6 of the act to regulate commerce (Act Feb. 4, 1887, c. 104, 24 Stat. 380 [U. S. Comp. St. 1901, p. 3156]), as amended by the Hepburn act of June 29, 1906, c. 3591, 34 Stat. 584 (U. S. Comp. St. Supp. 1907, p. 895), for transporting by rail certain car loads of glass bottles, which were moving in interstate commerce, without having first filed with the Interstate Commerce Commission its schedules of rates and charges applicable to such transportation.

The defendant owns and operates a line of railway entirely within the state of Illinois, extending from the east bank of the Mississippi river, at Alton, Ill., in an easterly and southeasterly direction for a distance of about 16 miles. This railway line intercepts and makes

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

junction with a number of trunk railway lines which extend eastwardly to points in other states than Illinois.

The indictment is in six counts. Each count recites the carriage by the defendant railway of a car load of glass bottles moving from a point in the state of Indiana to destination at Alton, Ill. Each car load so moving was received by the defendant at the junction point of its railway with one of the railways extending to the eastward, as above recited, and was by the defendant transported from such junction in the state of Illinois to Alton, Ill., where it was delivered to the consignee. The indictment recites that such transportation was so furnished without defendant having filed with the Interstate Commerce Commission any rate or charge whatever applicable to such transportation, or any evidence of the concurrence by the defendant in any rate or charge for such transportation theretofore filed by any of its connecting carriers.

The defendant by a plea of guilty has admitted all the material facts alleged in the indictment. The court, therefore, has the duty of imposing the penalty for the offenses set forth.

The original Cullom act for the regulation of interstate commerce, approved February 4, 1887, provided:

"That every common carrier subject to the provisions of this act shall print and keep for public inspection schedules showing the rates, fares and charges for the transportation of passengers and property which any such common carrier has established, and which are in force at the time upon its railroad as defined by the first section of the act."

The Cullom act also provided that such schedules should be plainly printed in large type; that copies for the use of the public should be kept in every depot or station of such railroads for public inspection; that no advance in rates should be made except after 10 days' public notice; that copies of the schedules of rates should be filed with the Interstate Commerce Commission.

By the amendment of March 2, 1889, the above provisions were amplified and extended, carriers being required to publish and file the classifications of freight, and to state separately the terminal charges and any rules or regulations affecting or determining any part or the aggregate of the rates. By this amendment of March 2, 1889, the commission was also given power to prescribe the form of the schedules of rates, and to change such form from time to time as might be found expedient. The purpose of this amendment was evidently that which prompted the original Cullom bill. Effective railroad rate regulation must begin with publicity of rates. To be public the rates must be laid before the Interstate Commerce Commission, must be kept in the stations of the carriers for the information of the public, and must also be printed in such form that they shall be intelligible to the average shipper upon examination. All of this was perceived by the lawmakers 20 years ago, and the rules, based upon these considerations, then written into the law, have continued unchanged, except as they have been from time to time strengthened and amplified.

On February 19, 1903, Act Feb. 19, 1903, c. 708, 32 Stat. 847 (U. S. Comp. St. Supp. 1907, p. 880), the "Elkins Act," became law. Section 1 of this act contains the following provision:

"The willful failure upon the part of any carrier subject to the said acts [the acts to regulate commerce] to file and publish the tariffs or rates and charges as required by said acts, or strictly to observe such tariffs until changed according to the law shall be a misdemeanor, and upon conviction thereof the corporation offending shall be subject to a fine of not less than $1,000 nor more than $20,000 for each offense."

By the amendment of June 29, 1906, section 6 of the act to regulate commerce was rewritten, and still further strengthened. The transportation of passengers or property in interstate commerce by any carrier which had not filed its rates in accordance with the act was made unlawful. The Elkins act at the same time was also amended by addition of the penalty of imprisonment for individuals.

Prior to the act of June 29, 1906, such a prosecution as this could not have been maintained. Before that time the act made failure to file rates with the commission at Washington an offense, but did not provide that transportation without filing rates should also be an offense. Under the old law, therefore, it has been decided that the prosecution for failure to file could be brought only in the District of Columbia, where the office of the commission is situated. By the amendment, however, the prosecution for transporting when rates are not filed may be well brought in any district through which the transportation passes. New York Central & Hudson Railroad Co. v. United States, 166 Fed. 267.

The above case was decided by the Circuit Court of Appeals of the Second Circuit on December 15, 1908. In this opinion the court said:

"Section 6 of the present interstate commerce act [substituted by the Hepburn act in the place of the section which we have examined] makes it unlawful for a carrier to engage in transportation unless its rates have been published and filed. It is now an offense to transport without a filed rate as well as to fail to file the rate. Under the statute as it now stands prosecutions may be instituted in any district through which the transportation may have been conducted."

It thus appears not only that the performance of interstate transportation by a carrier which has neglected to file and publish its rates and charges is a misdemeanor under the act to regulate commerce and under the Elkins act, punishable by as severe penalties as any other violation of these acts, but it also appears that the requirement for filing and publication of the rates has been in the act to regulate commerce ever since the passage of the original Cullom bill, and that its importance has been recognized by the Congress by successive amendments designed to make it more precise and its violation more surely and more severely punishable.

The railroad line of the defendant here is entirely situated within the state of Illinois. It is not more than 16 miles in length. It is really no more than a switching road connecting the various railways reaching East St. Louis and Alton, Ill., with each other and with various industries which have been established upon its rails. From the indictment and the plea thereto it appears, however, that this defendant is engaged in the transportation of property moving wholly by railroad from one state to another state. It is, therefore, as much subject to the act as though it owned and operated all the line of railroad connecting the points in different states between which moved the com-

modities mentioned in the indictment. C., N. O. & T. P. Ry. v. I. C. C., 162 U. S. 184, 16 Sup. Ct. 700, 40 L. Ed. 935; L. & N. R. R. v. Behlmer, 175 U. S. 650, 20 Sup. Ct. 209, 44 L. Ed. 309; U. S. v. C. & N. R. R. Co., 157 Fed. 321, 85 C. C. A. 27, 15 L. R. A. (N. S.) 167; Belt Ry. Co. v. U. S. (C. C. A., 7th Cir., October term, 1908) 168 Fed. 542.

These authorities establish that the law regarding publication of rates and charges for interstate transportation applies with equal force to all carriers engaging in such interstate transportation, whether such carriers operate trains from one state to another state or operate entirely within the boundaries of a single state.

The chief object of the act to regulate commerce is the prevention of discrimination. Carriers, being engaged in a public employment, must serve all members of the public on equal terms. This was the doctrine of the common law. It has been explicitly stated and strengthened by the successive acts to regulate commerce. The requirement of the act that all rates should be published is perhaps the chief feature of the scheme provided for the effective outlawing of all discriminations. If this portion of the act is not strictly enforced, the entire basis of effective regulation will be lost. Secret rates will inevitably become discriminating rates. Whenever discriminating rates or practices are made public, a thousand forces of self-interest and of public policy will be set at work to reduce them to fairness and equality. The failure of any carrier to properly file and publish its rates is quite as serious a violation of the act to regulate commerce as a failure to observe such rates after they have been properly filed and published.

The indictment states six separate instances in which cars moving in interstate commerce were carried by the defendant at a time when it had not filed its rates covering such service. The fact that the failure to file the rates does not appear to have been part of any scheme to discriminate forbids great severity. The fact that the violation admitted is serious and goes to the very heart of the whole subject of railroad regulation forbids that the penalty should be nominal. In view of all the circumstances, the fine assessed upon this indictment is fixed at the sum of $12,000.