**UNITED STATES v. CUNNINGHAM et al.**

District Court, M. D. Georgia, Athens Division.

Aug. 28, 1941.

400

Henry Schweinhaut, Sp. Asst. to the Atty. Gen., T. Hoyt Davis, U. S. Atty., and T. Reese Watkins, Asst. U. S. Atty., both of Macon, Ga., for United States.

Wallace Miller (Miller & Lowrey), of Macon, Ga., and Abit Nix (Erwin & Nix), of Athens, Ga., for defendants.

DEAVER, District Judge.

The defendants were indicted in the United States District Court for the Northern District of Illinois at the May term 1941. The defendants being in the Middle District of Georgia, application is made by the government for their removal to the Northern District of Illinois for trial.

At the hearing the defendants admitted their identity but contended that there was no probable cause for the prosecution. The government introduced a copy of the indictment and rested. The defendants then proceeded by introducing evidence on the question of probable cause. The government offered no testimony.

The indictment contains three counts. The first count is drawn under Section 51, Title 18 U.S.C.A. and charges a conspiracy to injure, oppress, threaten and intimidate certain persons in the free exercise and

enjoyment of their right and privilege to be free from slavery and involuntary servitude. The second count is drawn under Section 88 of said Title and charges a conspiracy to violate Section 443 of said Title by aiding in causing certain persons to be held as slaves. The third count is drawn under said Section 88 and charges a conspiracy to violate Section 444 of said Title, that is to say, a conspiracy to return and hold and cause to be held and returned certain persons to a condition of peonage on the farm lands of defendant Cunningham, where they had theretofore been held in peonage.

There are numerous authorities on the law governing removals but the law is clearly set forth in United States ex rel. Kassin v. Mulligan, 295 U.S. 396, 397, 55 S.Ct. 781, 79 L.Ed. 1501. Under that case, the defendant has a right to introduce evidence in opposition to the showing made against him and to have that evidence considered by the commissioner, but the commissioner is without power to rule on disputed questions of law or to decide controverted or doubtful issues of fact. The court said, moreover, that arbitrary or capricious appraisal of evidence or disregard of facts indubitably established by the evidence is tantamount to rejection of competent evidence and is in legal effect a denial of the right to be heard. To prevent removal the evidence must require a finding that there was no substantial ground for bringing the defendant to trial on any charge specified in the indictment. The court said the indictment is not evidence of the facts that it alleges, but, in the absence of evidence requiring a finding that there is no ground for prosecution, it establishes probable cause and requires an order of removal.

In Meehan v. United States, 6 Cir., 11 F.2d 847(3) is the following language: "Where there is affirmative proof, unchallenged, except by indictment, demonstrating lack of guilt, removal to another district for trial should be denied; but, if conclusion of no probable cause is put in substantial doubt by proofs in addition to indictment, removal should be made."

On page 849 of 11 F.2d, the court said: "When we come to the function of the indictment as evidence, we find some confusion in the cases, or at least in the thoughts expressed. If it were taken as prima facie evidence of guilt, in the largest sense of the term 'prima facie,' logical

difficulties would arise, because then it would continue of full force, and at the end of every removal proceeding there would be a conflict of evidence, which that tribunal could not try. The cases usually speak of it as prima facie evidence, not of guilt, but of the existence of probable cause. This is perhaps another way of saying that it raises an initial presumption, which might as well be arbitrary as evidential, which continues until it is in some vital particular overcome by entirely convincing testimony."

In Johnson v. Hotchkiss, 9 Cir., 35 F.2d 914, 915(3), the court held: "In habeas corpus proceeding by one sought to be removed to another district for trial, relator's uncontradicted testimony, corroborated by other witnesses, tending to show that he was not guilty of offense charged, held sufficient to overcome any presumption arising from indictment, so as to require government to offer additional proof of probable cause".

To the same effect, see Bullard v. Day, 9 Cir., 53 F.2d 206(1).

In Bonaventure v. United States, 9 Cir., 55 F.2d 833, the court said that the indictment makes a prima facie case and the government need not introduce other testimony unless accused's testimony overcomes presumption of probable cause arising from indictment.

In Ross v. Toombs, 5 Cir., 68 F.2d 154, the court holds that the prima facie case of probable cause made by the indictment is not a mere presumption of the kind that stands as evidence only to disappear when proof is offered, but that it is evidence making out a complete case until evidence comes in and afterwards remains in the case to be considered with the other evidence offered, to break it down, in determining whether there is probable cause to remove.

Another Fifth Circuit case, United States v. Hammond, 5 Cir., 98 F.2d 187, holds that removal should result where the evidence consists of the indictment on the one hand and a general denial by the defendant on the other, his testimony not being full and frank enough to convince the court of lack of probable cause.

In a removal hearing the indictment is not evidence of the facts alleged in it. The copy of the indictment has no probative value except to show that the indictment was returned and to disclose

the general nature of the crime intended to be alleged. The fact that the indictment was returned, evidenced by the introduction of a copy thereof, raises a presumption that there was probable cause for the prosecution. That presumption is not conclusive but does demand removal unless the defendant overcomes the presumption and clearly proves want of probable cause.

If there is a conflict of evidence as to guilt, removal is demanded. Even if the government has no evidence except the fact of indictment, and defendant denies his guilt, still if there are circumstances in the defendant's evidence from which a reasonable mind could draw an inference of guilt, removal should be ordered, even though the defendant's evidence as a whole convinces the court of his innocence. Moreover, even if there are no such circumstances, still if the evidence for the defendant is inherently improbable or is of such character as not to be convincing, then the prima facie case stands and warrants removal.

In this case, if defendant Cunningham were charged with the crime of peonage, the evidence would probably not prevent his removal, for the reason that, while he denies his guilt, the evidence shows that the persons named in the indictment did work on his farms, that they left, that he caused them to be indicted and pursued them to Chicago in an attempt to have them returned, that on other occasions in the past he caused to be indicted others who had left his farms, that the indictments were procured after lapse of considerable time and only after these persons had left his farms. Those facts, while perhaps not sufficient alone to convict before a trial jury, would in connection with the fact of indictment, probably be sufficient proof of probable cause for removal.

The indictment in this case, however, does not charge any offense except conspiracy.

"Where a charge of conspiracy is limited to two persons the guilty knowledge must have been shared by both to warrant conviction of either". Morrison v. California, 291 U.S. 82(3), 54 S.Ct. 281, 78 L. Ed. 664. On page 92 of 291 U.S., on page 285 of 54 S.Ct., the court says that it is impossible in the nature of things for a man to conspire with himself and that conspiracy imports a corrupt agreement between not less than two with guilty knowledge on the part of each.

While the indictment here charges that these two defendants conspired with each other and other persons unknown, the government, in the hearing, announced that no importance was attached to the words "persons unknown" and that the indictment, for the purpose of this hearing, should be regarded as charging conspiracy only between the two defendants named.

The uncontradicted and credible testimony in this case shows that the solicitor-general in Oglethorpe County does not appear before the grand jury, unless specially requested by the grand jury to do so. He has no facilities for investigation of cases and his usual and customary procedure is to hear facts brought to him at his office by any person, to obtain a list of witnesses, and, if the facts seem to him to make a criminal case, to draw an indictment and send it to the grand jury with the names of the witnesses. The grand jury calls the witnesses and passes upon the question of indictment. That procedure was followed in the case of the farm hands mentioned in this indictment, the information being furnished to the solicitor general by the defendant Cunningham. The grand jury indicted them for burglary. Extradition proceedings were instituted by the officers through the Governor's office in the regular routine manner, the papers passing through the hands of an assistant attorney general and the executive secretary. The sheriff of Oglethorpe County was designated in the extradition papers as the agent of the state to return the defendants to this state. A hearing was to be had in Chicago. The sheriff as designated agent employed the defendant, Mc-Whorter, to appear as an attorney in that hearing. On account of illness in the sheriff's family, a deputy of his was substituted as agent.

Up to the time of his employment by the sheriff, defendant McWhorter did not know the defendants in the state court indictment, did not know there was such indictment and had never discussed with Cunningham any matter connected with the indictment or with his labor situation, or conditions on his farms. McWhorter accepted employment by the sheriff and was paid by the county. He went to Chicago and acted there in his professional capacity. Cunningham went to Chicago to identify the defendants, not at the instance of Mc-Whorter, but at the request of the sheriff. The solicitor general, the sheriff, the Gov-

ernor, the assistant attorney general and the executive secretary acted in their official capacities in a routine matter. McWhorter acted in his professional capacity, at the expense of the county, in aid of the state and county officers in the performance of their duties. Cunningham may have had a bad motive but there is no more reason to think that he was in a conspiracy with McWhorter than that he was in a conspiracy with all the state and county officers. The evidence is clear and undisputed as to McWhorter's part in the proceeding and shows, beyond any sort of doubt, that, whatever Cunningham's motives or purposes may have been, he was not in any conspiracy with McWhorter.

 The only circumstance in the evidence urged against McWhorter is the fact that he went to Chicago to appear as attorney in the extradition proceeding. The government contends that his appearance there is sufficient to make a question of fact as to whether in doing so he was participating in the alleged purpose of Cunningham to return the defendants in that proceeding to a condition of peonage and slavery. The government further contends that before accepting employment as an attorney in the extradition proceeding, it was the duty of McWhorter to investigate the burglary cases and ascertain whether the defendants were guilty of burglary and to find out if Cunningham had any improper motive in procuring their indictment. Those contentions are without merit. In the course of ordinary professional practice, no such duty as that is imposed upon an attorney before accepting employment, in a regularly instituted legal proceeding, to appear in a public hearing before a tribunal in another state. Moreover, in addition to the direct testimony that there was no agreement or understanding to the effect contended between the defendants, the indubitable evidence as to McWhorter's conduct and knowledge shows that he had no corrupt understanding or intention in connection with the matter at any time.

It was argued that as a matter of policy the government, on account of the large number of removal proceedings in the United States, could not afford to establish the precedent of introducing testimony in removal hearings. By implication that is tantamount to urging the courts to order removal upon the indictment and proof or admission of identity, regardless of the testimony as to probable cause and thereby in effect to violate an act of Congress which grants to defendants the right to be heard and to have their evidence fairly considered.

If persons are being held in a condition of peonage on the Cunningham farm, he should be indicted and convicted, but the government should not link McWhorter with him in a nonexistent conspiracy, in order to obtain jurisdiction in another district and to secure removal to that district for trial.

The Supreme Court has said that there is no constitutional right to hearing before removal but that, on account of the hardships which might result to innocent persons from removal to a distant district for trial, Congress has granted to defendants the right to show that there is no substantial ground for prosecution.

 In this case McWhorter is a reputable lawyer of forty years' experience in the honorable practice of his profession. His testimony, corroborated by other witnesses and by unquestioned facts and circumstances connected with the extradition proceeding, demonstrate conclusively that he was not a party to any conspiracy. McWhorter is now in his old age and is afflicted with a serious heart ailment and to remove him to a distant district for trial, without any substantial ground for prosecution, would work on him a financial and physical hardship which it would be difficult, if at all possible, for him to bear. Congress intended that such a defendant should not be removed.

As was said in the Hotchkiss case, supra: "If it [the government] had no testimony against the appellant except such as was offered here, the appellant should never have been indicted, and should not now be removed to another district for trial. If the government had other testimony and failed to produce it, the fault is its own".

An order will be made denying the application for removal and discharging the defendants.