## UNITED STATES v. CHIARITO.
### Comm. No. 9374.

District Court, D. Oregon.

March 19, 1946.

Henry L. Hess, U. S. Atty., and Edward B. Twining, Asst. U. S. Atty., both of Portland, Or., for plaintiff.

Dellmore Lessard and George C. Reinmiller, both of Portland, Or., for defendant.

JAMES ALGER FEE, District Judge.

A United States Commissioner has bound over defendant for appearance in the District of Colorado. An amended petition for warrant of removal was filed here charging defendant as a fugitive from justice and reciting that defendant had been indicted in the District of Colorado. Upon motion of counsel for defense, evidence was heard upon the question of whether a removal order should be signed. Copy of indictment found in Colorado was displayed. Therein it is set up that a local selective service board of New York duly classified accused in IV-E and assigned him to work of national importance at a camp in New York, and that he was then duly transferred to Civilian Public Service Camp No. 59, Elkton, Oregon, where he reported. It is then charged: "That thereafter and on, to-wit, the 23rd day of July, A.D. 1945, the said Americo Chiarito was duly ordered transferred to CPS Camp No. 111 at the Town of Mancos, in the State and District of Colorado, and that the said Americo Chiarito did unlawfully, willfully, knowingly and feloniously fail, refuse and neglect to report to said CPS Camp No. 111, at the Town of Mancos, in the County of Montezuma, in the State and District of Colorado, * * *." Identity of accused as the person named in the indictment is admitted. Accused testified and the government conceded that he has never been in the District of Colorado at any time. A copy of the order of transfer directed to the accused was displayed. It is agreed that this is the order referred to in the quotation from the indictment above. This order is admittedly signed as follows:

"Lewis F. Kosch
Colonel, Field Artillery
Assistant Director-Camp Operations"

It is also conceded that Kosch is a Colonel of the Regular Army.

The United States contends that even though there be doubt as to the jurisdiction, the question must be left for the consideration of the trial court. If the question had been heard before the Honorable John Foster Symes, District Judge of the District of Colorado, for whom the writer has the highest respect, the order would immediately issue. Likewise, if the jurisdictional questions had been noted and passed upon by a federal judge any place, the ruling even if not controlling would be entitled to the greatest consideration. The plain fact is that the jurisdictional features of this prosecution have never been passed upon by any federal judge and that the indictment is only the product of a grand jury of laymen advised as to the law by some prosecuting officer for the United States.

Even if we find conclusively then, as a preliminary matter, that the accused did the act or made the omission charged, neither the grand jury of the District of Colorado nor the United States Attorney of that District can create jurisdiction of the offense, nor make those facts constitute a crime except under the authority of some law of the United States.

One factor, of course, must give pause. Even if it were here held that the indictment stated a crime and the district court of the District of Colorado had jurisdiction of such offense, both such questions would be open to enquiry in that court after removal. In that court, the rights of accused would be given protection even if this court erroneously held there was jurisdiction primarily. Furthermore, this court should not arbitrarily or capriciously obstruct the enforcement of law. Therefore, it is said that even if it be apparent, there could have been no offense against the United States, or that there was no offense committed or triable in the District

of Colorado, this court nevertheless, must issue the order of removal forthwith upon the display of a copy of the indictment. The present statute provides: "Where any offender or witness is committed in any district other than that where the offense is to be tried, it shall be the duty of the judge of the district where such offender or witness is imprisoned, seasonably to issue, and of the marshal to execute, a warrant for his removal to the district where the trial is to be had." 18 U.S.C.A. § 591.

This statute is mandatory in terms and squarely sets out the duty of a federal judge in the great majority of criminal cases where removal is sought. Furthermore, in view of the obvious public policy requiring judges to protect society and foster rather than hinder speedy punishment of criminals, it is said: "In view of the delays and obstructions that it is possible for persons accused to obtain and interpose by misuse of the right to be heard before removal (Cf. Salinger v. Loisel, 265 U.S. 224, 238 [44 S.Ct. 519]) section 1014 is to be construed quite favorably to the government's applications." United States ex rel. Kassin v. Milligan, 295 U.S. 396, 401, 55 S.Ct. 781, 783, 79 L.Ed. 1501.

■ However, the signing of the order of removal is an affirmative act.[1] Responsibility has been placed upon the judge for this act by a statute, in almost identical terms, for approximately 150 years. In this case the signing of the order will restrain defendant of his liberty for a period of several days until he can be transported for a distance of approximately 1500 miles. "In a country of such vast extent as ours, it is no light matter to arrest a supposed offender, and, * * * remove him hundreds, it may be thousands, of miles for trial." In re Buell, C.C.Mo., Fed.Cas.No.2,102, 3 Dill. 116, 120.[2]

It is the responsibility of a federal judge to make sure that there is jurisdiction of the subject matter and of the person at all times during the pendency of a proceeding. This is critically true in all criminal cases.

As a result, in this court over a long period of time, the court has followed a uniform system of procedure. When the indictments are returned by the grand jury they are examined by the presiding judge for the purpose of determining that there are no glaring defects therein and that jurisdiction is present. In appropriate cases, indictments are recommitted to the grand jury before filing, in order that errors may be cured. After filing, in case a jurisdictional defect were called to the attention of the court, the indictment would be dismissed. In innumerable cases, upon its own motion, this court has dismissed indictment for lack of prosecution, for failure to state a crime, for lack of jurisdiction, and for other causes. No cases can be found in the books for the reason that Congress has not seen fit to make this power of the court subject to review until recent times.

According to uniform procedure here, in all such cases as soon as the defendant has been brought into court, counsel is designated for him unless he affirmatively waives appointment. For many years, no enquiry has been made into the financial condition of the defendant as a prerequisite to the appointment of counsel. The United States Supreme Court has within recent years, held that the failure to provide counsel removed jurisdiction. However, such a ruling simply crystallizes the immemorial custom of this court. Although much of this protection of the rights of accused persons is not required by positive rule or statute, it is assumed the appellate courts will not hold that this court has been wrong in this interpretation of due process of law.

In removal cases, likewise, although it is said that a hearing before the judge is not guaranteed by the Constitution, neverthe-

---

[1] Tinsley v. Treat, 205 U.S. 20, 30, 27 S.Ct. 430, 432, 51 L.Ed. 689: "In other words, the removal is made a judicial, rather than a mere ministerial, act."

[2] Cf. Hyde v. Shine, 199 U.S. 62, 78, 25 S.Ct. 760, 762, 50 L.Ed. 90, where it is said: "To require a citizen to undertake a long journey across the continent to face his accusers, and to incur the expense of taking his witnesses, and of employing counsel in a distant city, involves a serious hardship, to which he ought not to be subjected, if the case can be tried in a court of his own jurisdiction."

less a hearing has been accorded in this court in every proceeding on removal for many years unless hearing has been affirmatively waived. In such proceedings, likewise, counsel are appointed where the accused has indicated such a desire, or where the occasion demanded. In a period of over 20 years, however, there have been only three cases where removal was refused by the court.

From the résumé of the proceedings of this court, it seems plain that the court cannot avoid a consideration of a question of jurisdiction even in a removal case. Since the responsibility is placed upon the judge of signing an order which will deprive a person of his liberty even for a short space of time, the judge cannot be absolved of his responsibility under his judicial oath. It is true that his construction of the statute relating to jurisdiction may be wrong and thereby one more possible wrongdoer is improperly released. But the judge has the same responsibility in the trial of a criminal case where he may direct a verdict of acquittal on the ground of failure of proof or lack of jurisdiction. There also, the United States would be remediless.

In cases where the initial court has ordered removal, and habeas corpus has been denied, the appellate courts have ordinarily affirmed. Of course, since there is no appeal from an order of removal, the appellate courts have not had the opportunity to pass upon the flagrant violations of the rules of fair play such as the indictment of a person upon specious or political grounds in a district where defendant had never been, across a continent, among strangers. Although the Supreme Court have vigorously expressed themselves as to the abuse of refusal of a removal order, they have never denied the power to refuse in the first instance. Where there is an insufficient statement of a crime in the indictment, that is no ground for refusal. Where the defendant has never been in a district but is charged with sending an instrumentality therein, ground for removal may exist.

A review of the cases upon removal in the Supreme Court of the United States might lead to erroneous conclusions unless these were carefully scrutinized. Generally speaking, these cases involved an order of the district court which grants removal and a denial of release by habeas corpus. Obviously, there is still the opportunity for the defendant in such a case to present the question of whether an offense has been committed, to the trial court. There have been only a scattering of causes which have been brought collaterally to the attention of the appellate courts where the lower court has denied removal. The Supreme Court of the United States in a recent expression has said that if the evidence shows there is no ground for prosecution, the order of removal should be denied.[3]

There are five grounds recognized by the courts for the denial of an order of removal. These are (1) the accused is not the party charged;[4] (2) failure to establish probable cause;[5] (3) invalidity of the indictment;[6] (4) the facts could not have been stated so as to constitute an offense against the United States;[7] (5) the trial court has no jurisdiction because the crime charged could not have been commit-

[3] "In the absence of evidence requiring a finding that there is no ground for the prosecution, the government is entitled to an order for removal. Beavers v. Haubert, 198 U.S. 77, 90 [25 S.Ct. 573]; Price v. Henkel, 216 U.S. 488, 493 [30 S.Ct. 257]. Cf. South Carolina v. Bailey, 289 U.S. 412, 420 [53 S.Ct. 667] (Emphasis supplied.) * * *
"By the appeal that court was called on to examine the evidence and to decide whether it was sufficient to require a finding that there was no substantial ground for bringing the petitioner to trial on any charge specified in the indictment." United States ex rel. Kassin v. Mulligan, 295 U.S. 396, 55 S.Ct. 781, 79 L.Ed. 1501.

[4] Johnson v. Hotchkiss, 9 Cir., 35 F.2d 914.

[5] United States v. Keough, D.C., 48 F. 2d 246; United States v. Cunningham, D. C., 40 F.Supp. 399, 403; Johnson v. Hotchkiss, supra.

[6] United States v. Morse, D.C., 287 F. 906.

[7] In re Benson, C.C.N.Y., 131 F. 968; In re Doig, C.C.N.Y., 4 F. 193.

ted or triable in the district [8] where the indictment was found.

Here the accused is unquestionably the party charged in the indictment. Whether we accept the indictment as conclusive proof, or rely upon the facts adduced at the hearing, the accused did not report at the designated camp in Colorado, therefore, there was "probable cause" to believe accused had failed to perform the acts as charged in the indictment. The indictment was properly returned and has no technical defect and is, therefore, not invalid.

But accused claims the facts shown indicate there is no jurisdiction to sign the order of removal. These claims may be supported; first, because the indictment indicates he was ordered to remain in the Oregon camp by civilian authority, to wit, his local Selective Service Board, and therefore the facts could not have been stated so as to constitute a crime against the United States; second, Congress has neither intended to delegate the power to create a crime of a nature which it has never created, nor intended to delegate the power of fixing novel venue; third, since accused was never in Colorado and did no act which took effect there, the venue could not have been laid there, and the court of that district had no jurisdiction. Finally, if the court of the district requesting removal has no jurisdiction for trial, the court of the district from which removal is requested must release the accused.

■ Proceeding to the first point, it is shown by the indictment that there could have been no offense charged against the United States. The indictment charges that accused was classified by the appropriate local board as a conscientious objector to both combatant and noncombatant service and assigned to Civilian Public Service Camp No. 59, Elkton, Oregon. The basic statute provides that any person "Found to be conscientiously opposed to participation in such noncombatant service, in lieu of such induction, be assigned to work of national importance under civilian direction." 50 U.S.C.A. Appendix, § 305(g). This court, with many others, has held that a failure to obey the order of the local board to report to a camp to which an objector so classified was assigned, is punishable. Further, we have held that it was the duty of one so assigned to remain in the camp so designated. The local boards consisting of civilians are the authorities who have the power to compel conscientious objectors to go to and remain in camps. The governing statute provided that "the President [was] authorized—to * * * establish * * * civilian local boards * * * and such other [civilian] agencies, including [appeal boards and] agencies of appeal, as may be necessary to carry out the provisions of this Act." Selective Training and Service Act of 1940, § 10(a) (2), 50 U.S.C.A.Appendix, § 310. The Act provides a special appeal procedure for conscientious objectors.

There is no claim here that the local Selective Service Board has assigned Chiarito to any other camp or directed him to report or remain in any other camp than No. 59. There was no proof as to who Colonel Kosch is, except that he is an officer of the regular army. There is no showing as to why he attempted to override the assignment by the local board and their order to accused to remain at Camp No. 59. Unless words are emptied of meaning, a military order by a colonel of the regular establishment to a conscientious objector against combatant and noncombatant service and so classified, is in direct violation of the language of the section which provides for assignment by civilians and direction in camp by civilians only. No delegation of authority could justify an action or regulation in direct defiance of the terms of the governing statute.[9] The issuance of such an order laid no basis for prosecution anywhere.

[8] United States v. Hecht, 2 Cir., 11 F. 2d 128; In re Doig, supra; United States v. Rogers, D.C., 23 F. 658; In re Dana, D.C., 68 F. 886; United States v. Lee, D. C., 84 F. 626; United States ex rel. Sirchie v. Smith, D.C., 52 F.Supp. 610.

[9] This is an entirely different problem from that discussed by some other courts.

In further distinction it must be noted that accused is not a convicted criminal and subject to arbitrary disposal by the Attorney General. It is argued that if he had been classified and inducted into the armed services, he could have been ordered into any state, or abroad, and would have been punished if he had not obeyed. But the very thesis of this statute is that accused is a civilian and is by this law "under civilian direction." Whatever we think of the policy of the lawmakers, we must extend to accused the rights of a civilian and the guarantees of the Constitution even in time of war. Accused was bound to report to his local board and accept assignment to a camp. If he failed to report for assignment, or if he left the camp without permission, he was subject to conviction.[10]

There is, then, no statute which declares it an offense against the United States for accused to fail to report from Elkton, Oregon, to Mancos, Colorado. The indictment itself shows that accused was charged as present in Oregon and that his presence here in a civilian public service camp was an essential element of the charge. There was no way in which the facts could have been stated in the indictment so as to fall within any crime defined by Congress.

If we take up the second ground of objection, it appears that accused did not do any act in Colorado. He was never in that District. No instance has been called to the attention of the court where Congress has made it a crime for a person to fail to go personally into another State or District where he has never previously

been, and there to perform an act. We may take it as the established practice of Congress to create no such crime.[11]

Without referring to any constitutional objection, it is clear that Congress, in a field where it probably has plenary power, has never made it a crime for a person who has been convicted of an offense against the United States to fail to report at some federal penitentiary in another state and deliver himself to the warden there. Congress has never made it a crime for a person who is charged with an offense in one federal district to fail to present himself from another state and district for trial in the former district. Nor has any statute placed a criminal penalty upon the failure of one charged with a crime in the courts of one state, who had gone into another state, to surrender himself for trial in the jurisdiction of indictment. The statute does not make it a crime for one classified in Class IVe to fail to report in another state and district at a camp to which he had not been assigned by the local board which had jurisdiction. Since never in the national history has an omission to go out of one state into another and there perform an act been made a crime, it may be assumed without the necessity for argument, that Congress had no intention of delegating the authority to create such a crime.

Further, the Congress did not intend to delegate the power to some other agency to set the place of trial. Such an intention would necessarily permit the agency to confer jurisdiction upon the court of the designated district. The mere statement of this proposition contains the refutation.

---

However, the process whereby regular army officers are permitted to issue regulations and orders to conscientious objectors who are placed by law under civilian direction savors not of rationalization but of perversion.

10 In order that there may be no misapprehension, the courts have enforced the Selective Training and Service Act, 50 U. S.C.A.Appendix, § 301 et seq., consistently throughout the war. Heavy sentences were imposed on violators who failed to report for military service or for assignment to conscientious objector camps, as well as upon deserters from the latter. No person, however, should be deprived of

his constitutional rights in a criminal case.

11 The cases cited apparently have fallen into disuse. Rumely v. McCarthy, 250 U. S. 283, 39 S.Ct. 483, 63 L.Ed. 983 (failure to file a report under Trading with the Enemy Act of the first world war, 50 U. S.C.A.Appendix, § 1 et seq.); New York Central H. R. R. Co. v. United States, 2 Cir., 166 F. 267 (failure to file a rate schedule with the Interstate Commerce Commission); cf. United States v. Lombardo, D.C., 228 F. 980 (failure to register the name of an alien woman in Washington, D.C.)

This brings us to the threshold of the third point. Accused had never been in Colorado. He had never done any act which produced an effect there. Congress could not, by delegation or otherwise, make it a crime in Colorado for accused to refuse to go into that state in person.

In the early cases, the issue of venue was slurred. An able jurist, Judge Blackford, held that Charles Dana, charged with criminal libel, who had published a newspaper in New York, a copy of which was sent to Washington, D. C., could not be removed to the District of Columbia. Although there was no intimation that Dana had been in the District of Columbia, removal was refused upon the ground that the statute did not provide for jury trial.[12] Where a resident of Maryland had, apparently, been in the District of Columbia operating a lottery shop, the federal court of Maryland refused to halt removal upon the ground that a jury trial was not provided, but bound defendant over to a court which could give such a trial.[13] Both decisions can be reconciled by the fact that where a defendant has been within the limits of the demanding district there is only a question of probable cause left if a crime is stated in the complaint or indictment.

In the case of In re Buell, supra, however, the issue was squarely met. Buell was indicted in the District of Columbia for criminal libel because of a paper which he published in Detroit. The district judge of the Eastern District of Missouri refused to order removal and discharged him from custody on habeas corpus. Upon review by the Circuit Court, the findings were affirmed. It is said: "It is the constitutional right of the citizen to be tried in the district in which the offense imputed to him is alleged to have been committed, and not elsewhere. Article 2 [sic], § 2."

Thereafter, under a few statutes, the failure to file a report in the National Capitol in the District of Columbia has been denounced as a crime. The cases which have dealt with such statutes are few. In New York Central & H. H. R.

R. Co. v. United States, supra, the appellate court reversed the trial court which had upheld an indictment of the defendant railroad corporation in the Western District of New York for the offense of willfully failing to file with the Interstate Commerce Commission certain schedules. The ground of reversal was that the proper venue lay in the District of Columbia since the statute provided that the schedules should be filed there. But that statute was amended in 1906 making it a crime to transport any goods when the rate schedules have not been so filed. The amendment to the statute laid the venue in any district through which the transportation has passed. United States v. Illinois Terminal R. Co., D.C., 168 F. 546. Apparently, subsequent prosecutions have been carried on under this latter statute exclusively.

Likewise, in United States v. Lombardo, supra, the court refused to enforce in the Western District of Washington, an indictment for failure to file a statement with the Commissioner General of Immigration in Washington, D. C. setting forth the name of an alien woman kept in violation of the arrangement for the suppression of the white slave traffic, upon the ground that the Act required the filing of a statement in the National Capitol and therefore the failure to file did not constitute a crime in the Western District of Washington. This holding was affirmed by the Supreme Court of the United States in United States v. Lombardo, 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897. There have, apparently, been no cases under this section filed in the District of Columbia.

In the Trading with the Enemy Act of the first world war, there was a provision requiring the filing of a statement regarding property held by alien enemies in Washington, D. C. An indictment was found against a defendant in the District of Columbia and removal proceedings were carried through with the approval of the Supreme Court of the United States. This opinion was filed in the midst of war and is the only known instance where re-

---

[12] In the matter of Charles A. Dana, D. C.New York, Fed.Cas.No.3,554, 7 Ben. 1.

[13] In re Cross, D.C., 20 F. 824.

moval proceedings based on the failure to file a document in another district were carried out. Rumely v. McCarthy, supra.

Apparently, more recently, such provisions are looked upon legislatively with disfavor. In any event, these seem currently to have fallen into disuse. A legitimate exception is a provision which establishes [13a] a locale where a nonresident of the United States must file a report.

Most of these anomalies as to venue which have muddied the opinions as to removal, arise from the attempt of the courts to follow "complex and irrational" English precedents of the 18th century in the field of venue.[14] Thus judicially extending the conspiracy dragnet so that the cause could be tried in any place wherein an overt act was committed[15] was, apparently, an adaptation of the rationale of statutes of England before the American Revolution. Blackstone[16] believed that the rules of venue should be relaxed if "the great ends of justice warrant." But it must be memorable to those who inherit the former tradition that this very matter of venue was set up as a grievance in the Declaration of Independence.

Crystallized out of this tradition are two specific provisions of the Constitution of the United States. Article III, Section 2 provides that "Trial shall be held in the State where the said Crimes shall have been committed." The Sixth Amendment is even more explicit. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State, and district wherein the crime shall have been committed, which district shall have been previously ascertained by law * * *."

In United States v. Smith, D.C., 173 F. 227, 231, the issue of venue was squarely met. There an attempt was made to take accused who had published forceful criticism of the Roosevelt administration, to Washington, D. C., for trial. The ground of the indictment was criminal libel. The court squarely held that the courts of the District of Columbia had no jurisdiction of the accused who had not been in the District at the time of the alleged offense Many of the observations fit neatly into the case at bar. The court says: "These defendants, as shown by the evidence, have not committed an act, a part of the doing of which was here and part of it in Washington. It is not that kind of a case. A United States statute, I might stop to say, which would make a case triable in a district different from the district where the act was committed, would be unconstitutional. Their acts are not shown by the evidence to have been acts part of which were committed in this district and part of them in Washington. It is not that kind of a case. Nor are they charged with doing an act here, the effect of which results in Washington. It is not that kind of a case. Everything that the evidence shows that the defendants did, they did in the district of Indiana, in the city of Indianapolis, in the county of Marion. * * * To my mind that man has read the history of our institutions to little purpose who does not look with grave apprehension upon the possibility of the success of a proceeding such as this. If the history of liberty means anything, if constitutional guaranties are worth anything, this proceeding must fail."

The Supreme Court of the United States has recently indicated a disposition to carry out the spirit of the limitations on venue without regard to the convenience of the government. In United States v. Johnson, 323 U.S. 273, 65 S.Ct. 249, 251, 89 L.Ed. 236, there was some difference in the court as to the purpose of the venue provisions but all concurred upon the proposition that the place where the acts were done which were denounced by Congress, was the only place where trial could be

---

[13a] United States v. Clayton-Kennedy, D.C., 2 F.Supp. 233.

[14] These statutes cover a wide range. (destroying ships or naval stores or magazines) 12 Geo. III, c. 24, § 2; (where either the act causing death or the death was outside Great Britain, the trial was held in Great Britain) 2 Geo. II, c. 21; (trial of persons committing crimes in India by the Kings Bench) 13 Geo. III, c. 63.

[15] Hyde and Schneider v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114, Ann.Cas.1914A, 614.

[16] Commentaries III, 385 Cooley's 4th ed., Vol. II, p. 1143.

held. The majority say: "The large policy back of the constitutional safeguards [as to venue in a criminal case] counsels against the unrestricted construction for which the Government contends when Congress has not commanded it; and no considerations of expediency require it."

It must be decisive of the question in this case that the district where the trial was to be had was patently not previously ascertained "by law". If there was violation of any authorized regulation under the Selective Training and Service Act of 1940, and there may well have been, it was in Oregon where defendant was in person, or in New York where the local Board which had jurisdiction over him, sat.

The district court of the District of Colorado had no jurisdiction of the omission which the indictment purports to allege. The District of Colorado had not been previously ascertained as the district where a crime designated by law could be committed. The District of Colorado was not designated or ascertained until the officer issued the order. Accused had never resided there or even been there. Accused had never done any act there. Accused owed no duty there. The local board which had jurisdiction to classify and assign him did not meet there. His local board did not assign him to Colorado, nor order him there. An army officer who had no jurisdiction over him by law, could not create a crime triable in Colorado by ordering a conscientious objector there from Oregon. Finally then, since there was no jurisdiction for trial in the district court of the District of Colorado, it follows that there was no jurisdicion for removal from the District of Oregon.

In many cases and articles there has been a deliberate or unconscious confusion between "probable cause" and these jurisdictional features. But the distinction is clear. The indictment itself is proof of probable cause against the defendant named.[17] This goes simply to the question of whether or not there were reasonable grounds to believe accused committed the crime charged. But jurisdiction cannot be presumed in any court even in preliminary stages,[18] nor has any federal court ever held to the contrary. In Greene v. Henkel, 183 U.S. 249, 261, 22 S.Ct. 218, 223, 46 L.Ed. 177, the court say: "We do not, however, hold that when an indictment charges no offense against the laws of the United States, and the evidence given fails to show any, or if it appear that the offense charged was not committed or triable in the district to which the removal is sought, the court would be justified in ordering the removal, and thus subjecting the defendant to the necessity of making such a defense in the court where the indictment was found. In that case there would be no jurisdiction to commit nor any to order the removal of the prisoner."

The United States Supreme Court has never retreated from the expressions set out in Tinsley v. Treat, 205 U.S. 20, 25, 29, 27 S.Ct. 430, 431, 51 L.Ed. 689, where the offer was to prove, among other things, that the accused against whom an indictment had been returned, "* * * has been for many years, a resident and citizen of the city of Richmond, state of Virginia, and that defendant never, at any time, or at any place in the state of Tennessee, at the times charged in the indictment, did or performed, or was party to, or engaged in, any act or thing in the said indictment charged * * *."

Further, that he did not have any connection with these acts "in any other place or places at any other time or times whatsoever." The court say that the trial judge, "* * * must look into the indictment to ascertain whether an offense against the United States is charged, find whether there was probable cause, and determine whether the court to which the accused is sought to be removed has jurisdiction of the same. 'The liberty of the citizen, and his general right to be tried in a tribunal or forum of his domicile,

---

17 Haas v. Henkel, 216 U.S. 462. 30 S. Ct. 249, 54 L.Ed. 569, 17 Ann.Cas. 1112; Price v. Henkel. 216 U.S. 488, 30 S.Ct. 257, 54 L.Ed. 581.

18 The distinction is carefully pointed out by Judge Hand in United States ex rel. Scharlon v. Pulver, 2 Cir., 54 F.2d 261.

imposes upon the judge the duty of considering and passing upon these questions.' 'Mr. Justice Jackson, then Circuit Judge, Re Green's [Case, C.C. Ohio,] 52 F. 104." The court thereupon reversed the cause because of the rejection of the evidence offered by accused.

In United States v. Hecht, 2 Cir., 11 F.2d 128, 133, one Brody, who had never been in Kansas City, in the Western District of Missouri, was charged with the sale there of narcotics. A proceeding was brought to remove him from New York City where the sale was actually made. The accused had forwarded the narcotics by express from New York to Kansas City. The Commissioner held that Brody should be removed to the Western District of Missouri. Habeas corpus was brought before the district court who released Brody because the court in the Western District of Missouri had no jurisdiction of the crime. The Circuit Court of Appeals of the Second Circuit affirmed this holding.

The whole discussion in this last opinion is precisely applicable to the situation here. An extensive quotation is justified since a paraphrase will lack the force of the original. The court say:

"In interstate rendition proceedings the question whether the person demanded is a fugitive from the justice of the demanding state is for the determination of the Governor of the state upon which demand is made. If he issues a warrant of arrest, it must stand in a habeas corpus proceeding 'unless clearly overthrown.' Hogan v. O'Neill, 255 U.S. 52, 41 S.Ct. 222, 65 L.Ed. 497.

"So if an indictment is filed in a District Court of the United States, and the person indicted is found in another state and arrested therein, and proceedings are instituted for his removal to the district in which the indictment was found, so that he may be tried thereon, the fact of the indictment is not necessarily conclusive.

"Article 3, section 2, of the Constitution provides that 'the trial of all crimes, except in cases of impeachment, shall be by jury; and such trial shall be held in the state where the said crimes shall have been committed.'

"The Sixth Amendment to the Constitution of the United States provides that 'in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed. * * *' As was said by the Supreme Court in Salinger v. Loisel, 265 U.S. 224, 232, 44 S.Ct. 519, 522, 68 L.Ed. 989: 'It must be conceded that under the Sixth Amendment to the Constitution the accused cannot be tried in one district on an indictment showing that the offense was not committed in that district; and it also must be conceded that there is no authority for a removal to a district other than one in which the Constitution permits the trial to be had.' And the court in the Salinger Case thereupon proceeded to inquire whether it appeared that the offense was not committed in the district to which removal was sought.

\* \* \* \* \* \*

"And it has been very properly said that a federal judge, to whom an application for a warrant of removal is made under section 1014, 'Misconceives his duty, and fails to protect the liberty of the citizen,' if he consents to the removal to another district solely on the strength of the indictment if it appears that the offense was not committed in the district in which the indictment was found. See Stewart v. United States [8 Cir.], 119 F. 89, 93, 55 C.C.A. 641; In re Buell, Fed.Cas. No. 2102; In re Terrell, C.C., 51 F. 213; United States v. Brawner, D.C., 7 F. 86; In re Dana, D.C., 68 F. 886."

This is reiterated in United States ex rel. Starr v. Mulligan, 2 Cir., 59 F.2d 200, 201, where it is said: "The sole question presented is whether the indictment charges the commission of a crime within the District of Columbia. If it does not, the relator cannot be held for removal. Tinsley v. Treat, 205 U.S. 20, 29, 27 S.Ct. 430, 51 L.Ed. 689; United States ex rel. Brody v. Hecht, [2 Cir.,] 11 F.2d 128; United States v. Glass, [3 Cir.,] 25 F.2d 941, 943; In re Doig, [C.C.Cal.] 4 F. 193."

These authorities are conclusive upon the proposition that there is no authority in the judge of this court to sign the order of removal.

The order of removal is refused.